## BAGNELL v. WALKER.

### Opinion delivered May 28, 1898.

MORTGAGE—PAYMENT.—To a bill to forclose a mortgage it is no defense that the mortgagor delivered to his agent the amount of the mortgage debt, with interest, to be transmitted to the mortgagee, if such agent failed to transmit the money to the mortgagee. (Page 329.)

Appeal from Sharp Circuit Court in Chancery.

RICHARD H. POWELL, Judge.

*Sam H. Davidson* for appellants.

A remittance of money by mail is at the risk of the party sending it, unless he was authorized by express direction or previous usage to so remit it.    17 Ark. 428.    In the absence of other satisfactory proof of authority to receive payment, possession of the note or security, by the alleged agent, is necessary to the protection of one paying to him.    19 Ill. App. 17; 2 Sandf. Ch. 325; 68 N. Y. 130; 18 Iowa, 500; 35 S. W. 997; 55 Ark. 347; 98 Ill. 156; 161 Mass. 101; *ib*. 96; *ib*. 164; 89 Mo. 553; Jones, Mortgages (4 Ed.) 964; 162 Mass. 72; 64 N. W. 414; 41 Pac. 1068; 63 N. W. 362.    Payment of a negotiable note to the original payee, after the note has been assigned, is no defense to an action by the assignee against the maker.    29 Ark. 497; 21 Ark. 393; 13 Ark. 151; 31 Ark. 429; Jones, Mortgages (2 Ed.), § 840; 1 Jones, Mortg. (4 Ed.) §§ 956 and 847; 89 Mo. 553; 25 Kas. 625; 23 Fed. 165.    The following authorities hold the same of non-negotiable instruments.    51 How. Pr. (N. Y.) 407; 14 Ill. 51; *ib*. 198.    Even in cases where payment is made direct to the in-- dorsee or payee of a draft or note who has not possession of it, but gives a receipt for it and agrees to surrender the paper, the

maker or payor is not protected against a *bona fide* holder of the paper. 18 Am. & Eng. Enc. Law, 190, note 2, and cases; 64 Ga. 544; 54 Ga. 52; 23 Kas. 482; 20 Pick. 545; 71 Ia. 155; 45· Wis. 189; 85 Tenn. 737; 1 Dan. Neg. Inst. (3 Ed.) §§ 769 and 769a; 51 Cal. 227; 31 Ark. 20; 41 Ark. 242. Authority to collect interest on a mortgage does not authorize the agent to collect the principal also. 1 Jones, Mort. § 964; 2 Sandf. Ch. 325; 68 N. Y. 130; 103 N. Y. 556; 50 N. Y. 410; 15 Ia. 459; 46 Ia. 797; Mechem, Agency, § 379; 28 N. J. Eq. 13; 26 Ill. App. 433. The maker was not entitled to notice of the transfer of the paper. 6 Cold. (Tenn.) 467; 22 Mich. 360; 2 Cow. 246; 14 Am. Dec. 475. The assignee was subrogated to the mortgage security. 26 Ark. 151; 15 Am. & Eng. Enc. Law, 844, 855.

*P. H. Crenshaw,* for appellee.

*Banks* v. *Flint,* 54 Ark. 40, is conclusive of every point raised in this case. Appellant is estopped to deny the agency of those who so held themselves out, with his acquiescence. Payment to the agent is payment to the principal, whether the agent's authority is express or implied.

BUNN, C. J. This a bill to enjoin appellant Davidson, as trustee in a certain deed of trust, from selling certain property therein contained, for the security of a debt alleged to have been paid. On final hearing, the temporary injunction was made perpetual, and Davidson, as also Bagnell, one of the parties defendant, appealed to this court.

The complaint set up that the note secured by the deed of trust was usurious, and furthermore that the note had been, in fact, paid.

The answer denied each of said allegations, and, with appropriate allegations, was made a cross-bill, praying the foreclosure of the deed of trust.

The chancellor held that there was no usury in the note or deed of trust, and that question is eliminated from the controversy here. The chancellor found, however, that the debt had been paid, and decreed accordingly for plaintiffs, dismissing defendants' cross-bill, and making the injunction perpetual. The

question therefore of the payment of the debt is all that is left for our consideration.

In May, 1890, Walker appointed, in writing sworn to by him, the Wilson & Toms Investment Company of St. Louis his agent to effect a loan for him of $1,000, drawing 7 per cent. interest per annum, due in five years, on certain real estate in Sharp county then owned by him, and which is the same as that involved in this litigation. The loan was effected. The note was executed, payable to one W. F. Leonard, for $1,000, bearing 7 per cent. interest from date, payable on the 1st of January and July of each year, and the note due and payable at the end of five years, after which time it bore interest at the rate of 10 per cent. The deed of trust was at the same time executed and acknowledged by Walker and wife, and delivered to George W. Toms, as trustee, and the money was paid by the company through the Bank of Mammoth Springs, Ark., whose cashier, H. G. King, had assisted Walker in borrowing the money. The note was assigned, for value, by Leonard to Bagnell some time in August, 1890; but of this Walker was not informed until some time in 1895, so far as the evidence discloses. The deed of trust was put on record soon after its execution.

Walker continued regularly to pay the semi-annual interest coupons, through the Mammoth Spring Bank and the Investment Company, until the latter went out of business in October, 1893, and was succeeded by the Central Trust Company of St. Louis. On the 10th of October, 1893, Walker sold the land in controversy to his co-plaintiff, G. P. Clay, gave him a warranty deed, and put him in possession at once; and on the following day sent, through Thomas H. Caleb, to the Mammoth Spring Bank, the sum of $1,036 (a sum sufficient to pay off the mortgage note and interest which would accrue thereon up to the 1st of January, 1894), and caused the same to be deposited in that bank for that purpose, and took his deposit receipt, in which was explicitly stated the object for which the fund was deposited. King, the cashier of the bank, presumably in obedience to instructions from Walker, addressed a letter to L. M. Hall (who, it appears, had become trustee in the deed of trust after the death of Toms, the original trustee named therein), in which Walker proposed to pay off the mort-

gage note and interest coupon, due 1st January, 1894, a year in advance of the maturity of the note, if the holder of the same would permit him to do so. This letter was turned over to Leonard, then the secretary of the Central Trust Company, and he communicated the proposition to Bagnell, and Bagnell agreed to it, but seems never to have heard anything more from it until more than a year afterwards, when, on demand, Walker refused to pay the coupons for July, 1894, and January, 1895, claiming that he had paid the note and interest to January, 1894, according to the proposition which had been accepted.

It appears that, after Bagnell (who was still unknown to Walker, and to King also) had agreed to accept the proposition through Leonard, King, cashier of the Mammoth Springs Bank, forwarded the $1,036 to the Central Trust Company, successors to the Wilson & Toms Investment Company, as stated, to be paid in settlement of the note and interest to 1st January, 1894, and in satisfaction of the deed of trust. No part of this sum appears to have ever been paid to Bagnell, except $35, the amount of the interest coupon due January 1, 1894, which was paid to Bagnell; nor does it appear that Bagnell ever knew, or had any information from which he might have been required to ascertain, that this money had ever been paid by Walker to the bank, or sent by it and paid to the Trust Company.

In January, 1895, or about that time, Bagnell notified Walker, direct, of the non-payment of the interest coupons of July, 1894, and of January, 1895, and demanded payment of them. Walker refused, and claimed that he had paid the debt according to the agreement heretofore stated; and, Hall having declined to act further as trustee, Bagnell appointed Davidson to act as such, and he was proceeding to foreclose the deed of trust, in accordance with the power in him vested therein, by sale of the property, but was enjoined from proceeding further by this suit.

All the interest coupons which had been paid were paid Bagnell through the Bank of Mammoth Springs and the Investment Company and the Central Trust Company, its successor, and these coupons, in each instance, were held by Bagnell until the money was actually paid, and then they were

sent direct to Walker.    When the coupon of January, 1894, became due, it was paid by the Central Trust Company, which, in answer to inquiry by Bagnell, about that time, informed him that Walker had decided not to pay the principal for the present.

The money was paid by Walker, but never received by Bagnell.    There is no proof that King, the cashier, or the Investment Company, or the Trust Company, was either the agent of Bagnell, or that he had anything to do with either, except as from time to time he would receive interest payments made through them by Walker.    Nor do there appear any circumstances or complications of circumstances in evidence by which we can say that Bagnell, by his conduct, misled Walker into paying the money to others than himself.    It was the duty of Walker to have paid the money only on the surrender of the note and coupons due; and if he entrusted this act of precaution to King, or either of the brokerage companies named, they became his agents in so far, and Bagnell was not responsible for their failures or defaults.    The question is one of fact, the principle of law applicable being well known and well established, and the facts do not show that Bagnell is liable for the loss thus occasioned to one or two parties more or less innocent.

The cross bill should not have been dismissed, nor should the chancellor have found that Walker had paid the debt, for there was no evidence to support such finding.

The decree of the court as to dismissal of the cross-bill is reversed, and the prayer of the cross-bill is granted, and the cause remanded with directions to foreclose the deed of trust.

WOOD, J., (dissenting.)    I am of the opinion that the evidence was sufficient to support the decree of the court.    I cannot say that the finding of the chancellor is clearly against the weight of the evidence, and therefore I think the decree of the court below should be affirmed.