IDA HORNBOSTEL, Appellant, *v.* FRANCIS S. KINNEY et al., Respondents.

In order to imply a covenant in a contract under seal, a manifest and clear intention must appear in the contract that one of the parties shall do the act in regard to which the covenant is to be implied.

Plaintiff, being the owner of a patent for a process for treating tobacco, by an instrument under seal executed by the parties, granted to defendant K. the exclusive right to use and to grant to others the right to use said process during the continuation of the patent in the manufacture of cigarettes. Defendant agreed to pay a specified royalty for each pound of tobacco treated. The contract provided that if said defendant and his sub-licensees failed to use said process in the treatment of at least 250,000 pounds of tobacco per annum then "said exclusive license shall cease, determine and be forfeited," but that in such event K. should "have the license, though not exclusive." *Held*, that a covenant could not be implied on the part of K. to treat, at least, the number of pounds specified each year and to pay the stipulated royalty thereon, but that he was simply obligated to pay the royalty on the quantity treated, and if it fell short of the specified quantity, the exclusive character of the license ceased.

*Booth* v. *C. R. M. Co.* (74 N. Y. 15) distinguished.

(Argued April 26, 1888; decided June 12, 1888.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made

the first Monday of April, 1885, which affirmed a judgment in favor of defendants, entered upon a decision of the court on trial at Special Term. (Reported below, 20 J. & S. 41.)

This action was brought upon an alleged covenant to pay an annual royalty of one cent a pound on 250,000 pounds of tobacco, and to restrain the defendants from using the words "Sweet Caporal" on cigarettes.

Charles Hornbostel, the husband of plaintiff, claiming to have invented a new process for treating and curing tobacco, and having applied for a patent therefor, assigned the same to plaintiff, and letters-patent were issued to her therefor. Plaintiff and defendant Kinney entered into a contract, under seal, in December, 1878, which, after reciting these and other facts, contained these clauses:

"Now, therefore, in consideration of the premises and of one dollar and divers other good and valuable considerations to her paid by said Francis S. Kinney, said Ida Hornbostel shall and hereby does grant unto said Francis S. Kinney the exclusive right, during the continuation of said patent, and of any extension or extensions thereof within the United States, excepting California, to use, and to grant to others the right to use, said process in the treatment of tobacco to be used in the manufacture of cigarettes, and the right, though not exclusive, during the continuation of said patent, and of any extension or extensions thereof within the United States, excepting California, to use said process in the treatment of smoking tobacco."

"And said Francis S. Kinney, in consideration of the premises, shall pay to said Ida Hornbostel one cent per pound for every pound of tobacco as aforesaid, he shall treat, or which may be treated under licenses granted by him by the said process during the continuation of said patent, and of any extension or extensions thereof within the district aforesaid ; but should a license be granted to any one under said patent by said Ida Hornbostel, to use said process in the treatment of tobacco of the same kind as to raw material or value, which said Francis S. Kinney is hereby authorized to treat, at a price

or consideration less than one cent per pound, then said Kinney shall pay no more therefor than the price at which said license shall be granted."

"Should, however, said Francis S. Kinney and his sub-licensees fail to use said process in the treatment of at least 250,000 pounds of tobacco per annum from and after May 1, 1879, then, and thereupon, said exclusive license shall cease, determine and be forfeited; but said Kinney shall, in such event, nevertheless, have the license, though not exclusive, to use said process in the treatment of tobacco to be used in the manufacture of cigarettes and in the treatment of smoking tobacco for the period and within the district aforesaid."

Kinney at the time was engaged in the tobacco business and was selling cigarettes to which he had given the name of "Caporal." He proposed to call cigarettes made from tobacco treated by the patented process "Sweet Caporal," to which Charles Hornbostel assented, and cigarettes were made by Kinney under the process, and royalties paid thereon until December, 1879, when he transferred his business to defendant, the Kinney Tobacco Company. About that time he stated to Hornbostel that the patented process did not work well and was worthless and offered to return the license, which Hornbostel declined to receive. It did not appear that after that time defendants used the process. They continued, however, to sell cigarettes under the name of "Sweet Caporal."

Further facts in reference thereto are stated in the opinion.

*Lewis Johnston* for appellant. There was a necessary implication from Kinney's finally taking the entire property of the patent that he should keep it and pay the "royalty" which the parties then contemplated and intended to be the consideration of the assignment of the patent to him. (*Hudson Canal Co.* v. *Penn. Coal Co.,* 8 Wall. 276.) When a party enters into an agreement, which can only take effect by the continuance of a certain existing state of circumstances, there is an implied engagement on his part that he shall do nothing of his own motion to put an end to that state of

circumstances under which alone the arrangement can be operative. (1 Add. on Cont. [Abb. & Wood's Notes, 1887] 308; *Sterling* v. *Maitland,* 5 B. & S. 840, 849; 34 L. J., Q. B. 1; 74 N. Y. 15; *Rogers* v. *Kneeland,* 13 Wend. 114; *Hartley* v. *Cummings,* 5 C. B. 247; 2 C. & K. 433; 19 Jur. 57; 17 L. J., C. P. 84; *Pilkington* v. *Scott,* 15 M. & W. 657; 15 L. J., Exch. 329; *McIntyre* v. *Belcher,* 14 C. B. [N. S.] 644, 654; 32 L. J., C. P. 254; 10 Jur. [N. S.] 329; 8 L. T. 461: 11 W. R. 889; *Morgan* v. *Rarey,* 6 H. & N. 265; *Bealey* v. *Stuart,* 7 id. 753; 31 L. J., Exch. 281; 8 Jur. [N. S.] 389; *Booth* v. *Cleveland Rolling Mill Co.,* 6 Hun, 591; *Hubbard* v. *Coolidge,* 1 Metc. 84; 1 Chitty on Cont. [11th Am. ed.] 80, and notes 88, 89.) As the contracts were, in each case, drawn by the defendants' attorney, the plaintiff not having the benefit of counsel, they should have a construction favorable to the plaintiff. (*Noonan* v. *Bradley,* 9 Wall. 394; 1 Add. on Cont. [Abb. & Wood's Notes, 1887] 290; *Evans* v. *Sanders,* 8 Port. [Ala.] 497; *Marion* v *Stone,* 2 Cow. 781, 806.) The evidence offered (and admitted under exception) of the uselessness of the patent was improperly admitted. (*Marston* v. *Swett,* 66 N. Y. 206; *Deane* v. *Hodge,* 35 Min. 146; *Coates* v. *Holbrook,* 2 Sandf. Ch. 586; *Taylor* v. *Carpenter,* 2 Woodb. & M. C. C. 1.) The defendant Kinney should be compelled to pay the "royalty" agreed upon, leaving him the full control of the "patent" he bought, with liberty to defendants to use it or not. (*In re J. B. Palmer's Trade-mark,* 50 London Law Times [N. S.], June 22, 1883; 30 Ct. of App.; 24 Ch. Div., L. R. 504.)

*John S. Davenport* for respondents.

PECKHAM, J. We do not think the plaintiff's contention as to the meaning of the agreement entered into between herself and the individual defendant can be sustained. That contention is, that the agreement between the parties contemplates the treatment of, at least, the minimum amount, annually, of 250,000 pounds of tobacco, by defendant, by the "Hornbostel

process," and the payment of the stipulated royalty therefor during the life of the patent, and that if the defendant ceased entirely to use the "process" above mentioned, the liability to pay the royalty to plaintiff on the stated minimum amount of tobacco annually would still remain.

The liability of the defendant is limited by the written agreement entered into between the parties, and the material part thereof is as follows: " Should, however, said Francis S. Kinney and his sub-licensees fail to use said process in the treatment of at least 250,000 pounds of tobacco per annum, from and after May 1, 1879, then and thereupon said exclusive license shall cease, determine and be forfeited; but said Kinney shall, in such event, nevertheless, have the license, though not exclusive, to use said process in the treatment of tobacco to be used in the manufacture of cigarettes, and in the treatment of smoking tobacco for the period and within the district aforesaid." By the prior portion of the agreement the license was exclusive during the continuance of the patent, of the right to use said process in the treatment of tobacco for cigarettes. It is thus seen that the exclusive character of the license, taking the whole agreement into consideration, depended upon the application of the process to, at least, 250,000 pounds of tobacco annually, and that if such an amount of tobacco were not subjected to such process, the exclusive character of the license ceased, determined and became forfeited, and the defendant thenceforward was subject simply to the obligation of paying the agreed-upon royalty of one cent a pound for each pound of tobacco which he subjected to this process.

This statement of the terms of the agreement seems to me the strongest argument against the contention of the plaintiff. There is nothing in the agreement, or in the surrounding circumstances in proof in the case, from which a covenant can be implied that the defendant should, at all events, subject at least 250,000 pounds of tobacco annually to this process, or pay a royalty upon that amount the same as if he had. The penalty for a failure to thus subject annually that amount of

tobacco to the process is provided for by and contained in the agreement, and that is, that the exclusive character of defendant's license shall cease and be forfeited.

Authority for implying the covenant is thought by the plaintiff to rest in the case of *Booth* v. *Cleveland Rolling Mill Company* (74 N. Y. 15). That case, however, holds that in order to imply a covenant in a contract under seal (which this contract is) there must exist a manifest and clear intention that one of the parties shall do the act, in regard to the doing of which the covenant is to be implied. To make the case fit the facts here we should have to hold that there was in the contract in question a clear intention manifested that the defendant should, at all events, during each year of the life of the patent, subject at least 250,000 pounds of tobacco to the process, and pay the royalty thereon annually. On the contrary, a perusal of the whole contract leaves us in no doubt there was no such intention, but simply an intention to revest in the plaintiff the right to license others upon the failure of defendant to subject the stated amount of tobacco annually to the process. Judge ALLEN, in the case above cited, well says: "It is a cardinal principle that every agreement or covenant must be interpreted according to its peculiar terms, and so as to carry out the intent of the parties, and it follows that the ruling upon, and the interpretation of, one agreement will seldom aid in the construction of another, except as it may illustrate some general rule of interpretation applicable to both." The case cited is so different in its facts and in the character and purpose of the agreement construed from the one under consideration here that it lends no aid as to the proper interpretation of the latter. We feel quite clear that there is no foundation for the plaintiff's theory of an implied covenant to manufacture.

Upon the second proposition of plaintiff in which she desires an injunction preventing defendant from using the trade-mark, "Sweet Caporal," which she alleges he is using, and which she also alleges distinguishes the cigarettes made from tobacco subjected to the above-mentioned process,

the findings and refusals to find of the trial judge are fatal to her contention. He was requested to find that the brand or trade-mark, "Sweet Caporal," under which the cigarettes were sold became widely known and valuable in the community because of the use of the said invention or process in treating the tobacco and in the manufacture of the cigarettes and because of the liking of consumers therefor, and the belief and confidence of the public that said cigarettes were made from tobacco treated by said process. This was refused by the judge.

The evidence seems to show that the public were entirely ignorant of the existence of any such process, and consequently of its effect upon tobacco. There was evidence also tending to prove that the process itself was of no value; that there were other and just as efficient means of attaining the same end, and finally that the individual defendant had given up and abandoned the use of the process since December, 1879, and had at that time notified the plaintiff to that effect, and that the corporation defendant had never used the process, and the right to use it had never been assigned to it by the individual defendant. The evidence also tended to show that the word "Sweet" was first prefixed to the word "Caporal" (which had always belonged to the individual defendant) as a means for him to discover the amount of the sales of tobacco subjected to the plaintiff's process, and thus to give him some means of forming an opinion of the value of the process, but that there was no intention of making any agreement, and no agreement was, in fact, made, that, as between these parties, the adoption of that means should result in the making of a brand or trade-mark in which they should have common rights, and which the defendant should have no right to use unless he continued to use the plaintiffs' process. Upon the findings and refusals to find, made by the trial judge, we think no right to an injunction was shown, and the judgment should, therefore, be affirmed, with costs.

All concur.

Judgment affirmed.