FREDERIC W. RHINELANDER, Appellant, v. THE FARMERS' LOAN AND TRUST COMPANY, Respondent.

BENJAMIN W. FLEISHER, Appellant, v. THE FARMERS' LOAN AND TRUST COMPANY, Respondent.

1. RAILROAD MORTGAGE — LIABILITY OF TRUSTEE TO BONDHOLDERS FOR FAILURE TO COMPLY WITH PROVISIONS OF MORTGAGE — ACTION AGAINST TRUSTEE, NOT WITHIN TWENTY YEARS' STATUTE OF LIMITATIONS. Where a railroad company executed a mortgage, under seal, upon property to be thereafter acquired and constructed, to a trust company as trustee for the holders of the bonds secured by such mortgage, which provided that the bonds should be deposited with the trustee to be certified and issued from time to time at the request of the company, or its president, in writing, the net proceeds thereof to remain in the hands of the trustee to be paid out only for the purpose of acquiring property and constructing and equipping the railroad, and to be "paid out only on the

written order or request of the executive committee of the board of directors of the company, or a majority of said committee, in which order or request the president, or acting president, of the company shall in all cases join, and all such orders and requests shall include a written statement, or memorandum, declaring the purpose, or purposes, for which the proceeds of said bonds so ordered to be paid over are to be appropriated or used," and also provided, in substance, that the company might apply any of the said bonds for the purposes of its incorporation without converting the same into money, and in that case it should furnish a similar statement or memorandum declaring the purpose, or purposes, for which the bonds were to be used, but no positive covenant was made by the trustee to carry out such provisions, an implied covenant to that effect cannot be read into the mortgage upon which an action upon a sealed instrument can be commenced, within twenty years from the execution of the mortgage, against the trustee for its failure to comply with such provisions.

2. SAME — ACTION AGAINST TRUSTEE FOR BREACH OF IMPLIED LEGAL DUTIES OR OBLIGATIONS, MUST BE COMMENCED WITHIN TEN YEARS FROM TIME OF BREACH OF TRUST. The failure of the trustee to carry out such provisions of the mortgage and protect the interests of the bondholders by refusing to issue bonds and pay out the proceeds thereof until assets available to support the mortgage security should be acquired by the railroad company, unless ordered to do so by the court, constitutes, however, a breach of an implied legal duty or obligation springing from the relation of trustee and *cestui que trust*, upon which an action against the trustee can be maintained by aggrieved bondholders, but such action falls within the provisions of section 388 of the Code of Civil Procedure and must be commenced within ten years from the time of the last delivery of the bonds by the trustee to the railroad company.

*Rhinelander* v. *Farmers' Loan & Trust Co.*, 58 App. Div. 619, affirmed.
*Fleisher* v. *Farmers' Loan & Trust Co.*, 58 App. Div. 473, affirmed.

(Argued June 23, 1902; decided December 9, 1902.)

APPEALS from two orders of the Appellate Division of the Supreme Court in the first judicial department, entered April 12, 1901, which affirmed two judgments entered upon a decision of the court on trial at Special Term sustaining demurrers of defendant to the replies of the plaintiff and dismissing the complaint.

The nature of the actions and the facts, so far as material, are stated in the opinion.

*Silas W. Pettit, Thomas N. Rhinelander* and *Francis C. Huntington* for appellant in both cases. The complaint states

facts sufficient to constitute a cause of action. (*Belden* v. *Burke*, 72 Hun, 51; *Frishmuth* v. *F. L. & T. Co.*, 95 Fed. Rep. 9; *Tuttle* v. *Gilmore*, 36 N. J. Eq. 617.) When the so-called " Land Grant " bonds were issued there was no land grant. (*Bank* v. *Byers*, 41 S. W. Rep. 325; *Nash* v. *Minn. Trust Co.*, 159 Mass. 437; *Stevenson* v. *Marble*, 84 Fed. Rep. 23; *Miles* v. *Roberts*, 76 Fed. Rep. 919; *Miles* v. *Vivian*, 79 Fed. Rep. 848; *D. R. Co.* v. *U. S. T. Co.*, 41 Fed. Rep. 720.) The defendant issued and delivered the bonds without the statement required by the mortgage. (*Schoellkopf* v. *Coatsworth*, 166 N. Y. 77; *Gillet* v. *Bank of America*, 160 N. Y. 549; *Russell* v. *Allerton*, 108 N. Y. 288; *Wright* v. *Reusens*, 133 N. Y. 298; *Jugla* v. *Trouttet*, 120 N. Y. 21; *Wilmerding* v. *McKisson*, 103 N. Y. 329; *N. Assn.* v. *Smith*, 85 Fed. Rep. 401; *Prentice* v. *F. Co.*, 58 Fed. Rep. 437; *Accumulator Co.* v. *Dubuque Co.*, 64 Fed. Rep. 70; *Westervelt* v. *Mohrenstecker*, 76 Fed. Rep. 118.) The duty as between the trustee and the *cestui que trust* is expressed in the mortgage. (*W. Assn.* v. *Smith*, 85 Fed. Rep. 401; *Hendrick* v. *Lindsay*, 93 U. S. 143; *Sturgis* v. *Knapp*, 31 Vt. 1; *Clark* v. *Howard*, 74 Hun, 230; *Hollister* v. *Stewart*, 111 N. Y. 644; *H. C. Co.* v. *P. C. Co.*, 8 Wall. 276; *Frey* v. *Johnson*, 22 How. Pr. 316; *Booth* v. *C. M. Co.*, 74 N. Y. 15; *Jones* v. *Kent*, 80 N. Y. 585; *Mansfield* v. *N. Y. C. & H. R. R. R. Co.*, 102 N. Y. 205.) The plaintiff can sue on the mortgage. (*Lechmere* v. *Carlisle*, 3 P. Wms. 211; *Osgood* v. *Strode*, 2 P. Wms. 245; *Stephens* v. *Freeman*, 1 Ves. Sr. 73; *Oldham* v. *Litchfield*, 2 Vern. 506; *Gale* v. *Gale*, 6 Ch. Div. 144–148; *Vandyne* v. *Vreeland*, 3 Stock. 370; *Finley* v. *Simpson*, 22 N. J. L. 311; *Patton* v. *Heustis*, 2 Dutch. 293; *Harrison* v. *Vreeland*, 9 Vroom, 366; *Atl. Dock Co.* v. *Davitt*, 54 N. Y. 35; *Bowen* v. *Beck*, 94 N. Y. 86–89.) The limitation is twenty years. (Code Civ. Pro. §§ 380, 381; 2 R. S. 301, § 48; *Dwinelle* v. *Edey*, 102 N. Y. 423; *Van Schaick* v. *T. A. R. R. Co.*, 38 N. Y. 346; *Coster* v. *Mayor, etc.*, 43 N. Y. 339; *Miller* v. *Parkhurst*, 9 N. Y. S. R. 759; *Bowen* v. *Beck*, 91 N. Y. 86; *N. Y. L.*

*Ins. Co.* v. *Aitken,* 125 N. Y. 660; *Marr* v. *Cheston,* 1 Swanst. 416; *Masters* v. *Stratton,* 7 Hill, 101; *Wilbur* v. *Brown,* 3 Den. 356.)

*John E. Parsons* and *David McClure* for respondent in both cases. The complaint does not state a cause of action. (*People* v. *Suprs. of Orange County,* 17 N. Y. 235; *People* v. *H. Ins. Co.,* 92 N. Y. 328; *D. Ry. Co.* v. *U. S. T. Co.,* 40 Fed. Rep. 720; *Hollister* v. *Stewart,* 111 N. Y. 644.) These actions are not brought upon a sealed instrument, and the twenty years' Statute of Limitations does not apply. (*Fogg* v. *Blair,* 139 U. S. 118; *Ambler* v. *Choteau,* 107 U. S. 586; *Kent* v. *S. C. Co.,* 144 U. S. 75, 91; *Van Weel* v. *Winston,* 115 U. S. 228; *Chicot Co.* v. *Sherwood,* 148 U. S. 529; *Bogardus* v. *N. Y. L. Ins. Co.,* 101 N. Y. 328; *Black* v. *H. Ins. Co.,* 47 Hun, 210; *Stoddard* v. *Treadwell,* 26 Cal. 294; *U. S.* v. *Ames,* 99 U. S. 35; *B. C. Inst.* v. *Bitter,* 87 N. Y. 250.)

Bartlett, J. The actions are brought by bondholders as the *cestui que trust* in a railroad mortgage against the defendant as the trustee therein, to hold the defendant liable for its affirmative act of certifying, issuing and delivering bonds, to be sold to the plaintiffs, or whoever might become the purchaser thereof, as first mortgage land grant bonds, secured by mortgage on the land grant described therein, contrary to and in violation of the covenants of the mortgage.

The plaintiff Rhinelander is the holder of twenty bonds of the Oregon Pacific Railroad Company, purchased in the year 1887, and the plaintiff Fleisher is the holder of five bonds purchased in the year 1889.

Two questions are presented on this appeal: (1) Do the complaints set forth a cause of action? (2) Are these actions brought upon a sealed instrument and barred only by the twenty years' Statute of Limitations; or upon an implied covenant or obligation springing from a breach of duty on the part of the trustee, not found in specific terms in the mortgage, and barred by the ten years' Statute of Limitations?

On the first day of October, 1880, the Oregon Pacific Railroad Company executed its first mortgage, land grant, sinking fund, gold bonds for $15,000,000, par value, being 15,000 bonds of $1,000 each, due October 1st, 1900, the payment of which was secured by a mortgage executed by said Oregon Pacific Railroad Company, as party of the first part, the defendant, the Farmers' Loan and Trust Company, as party of the second part, and the Willamette Valley and Coast Railroad Company, as party of the third part.   The bonds state upon their face that they are "limited in issue to $25,000 per mile of the said railroad ;" they also state that they are secured by a mortgage or deed of trust, signed by the Oregon Pacific Railroad Company jointly with the Willamette Valley and Coast Railroad Company to the Farmers' Loan and Trust Company as trustee for the holders of the said bonds, conveying the property and franchises of the said two railroad companies, including land grants and all other real estate owned or to be owned by them.

The complaint alleges, among other things, that the Oregon Pacific Railroad Company was incorporated under the laws of the state of Oregon about September 14th, 1880, with authority to construct and operate a line of railroad from Yaquina Bay, Benton county, Oregon, to Boise City in the state of Idaho ; and to construct and operate the line of railroad of the Willamette Valley and Coast Railroad Company ; also to issue the bonds secured by the mortgage, to which reference has already been made.

It is further alleged that the Willamette Valley and Coast Railroad Company was incorporated under the laws of the state of Oregon in July, 1874, with authority to construct and operate a line of railroad from Corvalis in Benton county, Oregon, to the tide water on Yaquina Bay in the same county and state ; and by acts of the legislature of the state of Oregon there was granted to said railroad company all the tide and marsh lands situate in said county of Benton ; and the right to take from the lands of the state adjacent to the line of said road, timber, stone, water and other materials necessary

to its construction, with other rights that need not be specifically stated; that the Willamette Valley and Coast Railroad Company, at the time its franchise and property were conveyed to the Oregon Pacific Railroad Company, possessed the right to become the owner by payment of six hundred thousand dollars, of all the shares of the capital stock of the Willamette Valley and Cascade Mountain Wagon Road Company, an Oregon corporation; and also the grant of land known in this case as the land grant of the said wagon road company, amounting to 850,000 acres, the same being a right of selection from twice that number of acres of land located within the limit of six miles on either side of the route of the said wagon road company, which stocks and lands were subject, before the title thereto could be acquired by the said the Willamette Valley and Coast Railroad Company, to the payment of said sum of six hundred thousand dollars.

The questions presented by this litigation involve the construction of the fourth and fifth subdivisions of the mortgage, which read as follows:

"*Fourth.* That the party of the first part shall and will, and it hereby covenants and agrees to apply the net proceeds arising from the sale of the bonds secured by this indenture, in the first place to the liquidation and discharge of the herein-mentioned incumbrance, amounting to six hundred thousand dollars or thereabouts, now existing upon the land grant known as the grant of the Willamette Valley and Cascade Mountain Wagon Road Company, and subsequently to the building, grading and otherwise constructing the line of the said railroad, as the same may have been or may be surveyed and laid out, and for the full and complete furnishing and equipping of the said railroad, and the purchasing and procuring of locomotives, engines, cars and other proper equipment, and rolling stock, and other proper and suitable appurtenances for the said railroad, and for erection of depots, station houses, and such other buildings as may be suitable and proper for the same, and also for the purchasing, furnishing, equipping and operating of such steamships,

steamers, barges, ferryboats and other water craft as may be suitable and proper for the carrying out of the purposes for which the party of the first part was incorporated, or any of them, and also for such other and further purposes as may enable the party of the first part to engage in the other enterprises and purposes for which it has been so incorporated, and further, that the proceeds of the first issue of the said bonds to the extent of three million two hundred and fifty thousand dollars of principal shall be applied in the first place to the satisfaction of the said incumbrance, and to the building, constructing and equipping of the first one hundred and thirty miles of the said railroad from the ocean eastward in case of surplus to the acquiring of necessary water craft.

" *Fifth.* That the party of the first part shall and will, and it hereby covenants and agrees, after the said bonds shall have been duly executed by and on behalf of the party of the first part, to deposit the same with the party of the second part, to be certified and issued from time to time as the same may be sold or otherwise disposed of, and the said trustees may certify and issue any of said bonds at any time on the request of the party of the first part, or of its president, in writing, and the net proceeds which may be realized on the sale of the said bonds shall be paid over to and remain in the hands of the said trustee for the purposes above enumerated, and shall be paid out only on the written order or request of the executive committee of the board of directors of the party of the first part or of a majority of the said committee, in which order or request the president or acting president of the party of the first part shall in all cases join, and all such orders and requests shall include a written statement or memorandum declaring the purpose or purposes for which the proceeds of the said bonds so ordered to be paid over are to be appropriated or used ; provided, however, that in case the party of the first part shall desire to apply any of the said bonds for the purposes of its incorporation, without converting the same into money, then and in that case it shall furnish the said trustee with a like written order or request of the said execu-

tive committee, or of a majority thereof, in which the said president or acting president shall join, which shall include a written statement or memorandum declaring the purpose or purposes for which the said bonds are to be appropriated or used, and in such case the said trustee shall certify, issue and deliver the said bonds. It shall be the duty of the president and secretary of the party of the first part to furnish the said trustee with a written certificate, under the seal of the said corporation, of the names and residences of the persons constituting such executive committee, which certificate shall be conclusive evidence for the said trustee of the fact that the persons so named constitute and compose such executive committee until it shall be notified in like manner of the appointment of other persons in their room and stead. Nothing herein contained shall be so construed as requiring the said trustee to inquire into the application of the funds or of the bonds which it may deliver over on the receipt of such orders or requests as aforesaid."

We come then to the consideration of the controlling question, whether the complaints state a cause of action, and, if so, whether the action is brought upon the mortgage as a sealed instrument, or for a breach of the implied duty or obligation springing from the relation of trustee and *cestui que trust.*

A careful study of the provisions of the mortgage satisfies us that the defendant is in breach of no affirmative covenant made by it and contained therein. The covenants recited in the fourth and fifth subdivisions of the mortgage are those of the Oregon Pacific Railroad Company as mortgagor.

In brief, the mortgage contains, among other things, the usual recitals of fact, the covenants of the mortgagor, the ordinary provisions for foreclosure in case of default in the payment of interest on the bonds, the provision covering a case of vacancy in the office of trustee, and a clause limiting the liability of the trustee and providing for the repayment of its necessary disbursements. Then follows the witnessing clause, which, among other statements, contains these words, " and the said Farmers' Loan and Trust Company, party of the

second part, for the purpose of signifying the acceptance of the trust herein and hereby created, hath caused these presents to be subscribed by its president, and attested by its secretary, and hath caused its corporate seal to be hereto affixed."

We thus have the case of the ordinary railroad mortgage, in which the trustee enters into no positive covenants, but accepts the trust which provides in express terms the duties of the trustee in the event of default in the payment of interest and resulting foreclosure and sale. There is no complaint made as to the manner in which the trustee performed these duties.

In order to determine the precise nature of the liability of the trustee, sought to be enforced by the plaintiff, it becomes necessary to consider the provisions in detail contained in the fourth and fifth subdivisions of the mortgage already quoted in full. In the fourth subdivision the Oregon Pacific Railroad Company covenants to apply the net proceeds of the sale of the bonds, *first* to the discharge of the incumbrance of six hundred thousand dollars existing upon the land grant of the Willamette Valley and Cascade Mountain Wagon Road Company ; *second*, in brief, for the purposes of its incorporation generally ; *third*, to enable it to engage in the other enterprises for which it was incorporated.

In the fifth subdivision the Oregon Pacific Railroad Company covenants that after the bonds are executed it will deposit them with the trustee to be certified and issued from time to time at the request of the company, or its president, in writing, the net proceeds to remain in the hands of the trustee, *for the purposes above enumerated.* (These purposes are those already pointed out as contained in the fourth subdivision.) It is further provided that these proceeds are to be "paid out only on the written order or request of the executive committee of the board of directors of the party of the first part, or of a majority of said committee, in which order or request the president, or acting president, of the party of the first part shall in all cases join, *and all such orders and requests shall include a written statement, or memorandum,*

*declaring the purpose, or purposes, for which the proceeds of said bonds so ordered to be paid over are to be appropriated or used."*

It is further provided in this subdivision, in substance, that the party of the first part may apply any of the said bonds for the purposes of its incorporation without converting the same into money, and in that case it shall furnish a similar statement or memorandum declaring the purpose, or purposes, for which the bonds are to be used.

The complaint alleges in this connection, in substance, that the trustee has not kept its covenant and agreement in this behalf; that it had in its possession the entire issue of 15,000 bonds, and delivered to the Oregon Pacific Railroad Company May 31st, 1881, 3,250 of said bonds without receiving a statement of the purposes for which said bonds were to be appropriated as required by the mortgage. That the statement actually received reads as follows: " That the purposes for which said bonds are to be appropriated or used are the purchase of necessary materials, the construction of its lines and the discharge of its obligations, and for other purposes of the organization."

The complaint then alleges : " And this although at that time whatever right the said Willamette Valley and Coast Railroad Company ever had to acquire said lands as specified and conveyed in and by said mortgage had expired ; *all which was well known to said defendant."*

For the purposes of this appeal the facts alleged in the complaint must be taken as true.

The charge of the complaint is that the trustee violated *its covenant and agreement* by delivering to the railroad company these 3,250 bonds without exacting a statement showing that the latter proposed to devote this first issue to the discharge of the incumbrance of six hundred thousand dollars existing upon the land grant of the wagon road company, as specifically required by the mortgage, with full knowledge that the time to acquire the land grant of about 850,000 acres of land had been allowed to expire.

The complaint also alleges that the trustee on or about December 11th, 1884, delivered to the railroad company on a like general statement and with full knowledge that the said one hundred and thirty miles of railroad had not been built and equipped, one thousand more of said bonds; that on February 17th, 1885, under like circumstances, 3,750 bonds were delivered, and in June, 1885, the balance of 7,000 bonds were delivered under the same conditions.

The allegation of the complaint that the trustee has not kept and performed its covenant and agreement in this behalf must necessarily refer to an implied covenant and agreement, as the mortgage contains no positive covenant that the trustee will exact from the railroad company such a statement as is described in the mortgage.

The defendant points out in this connection that the fifth subdivision of the mortgage provides that " Nothing herein contained shall be so construed as requiring the said trustee to inquire into the application of the funds, or of the bonds, which it may deliver over on receipt of such orders or requests as aforesaid." This suggestion is aside from the question; the claim of the plaintiffs is that the trustee rested under the obligation, in the first instance, of exacting from the railroad company a statement showing the purposes for which each issue of bonds was to be used. If this be so, the provision of the mortgage exempting the trustee from inquiring into the application of the funds or the bonds " delivered over on the receipt of such orders, or requests," does not apply, as the point made refers solely to the right of the trustee to issue the bonds.

At the time the first 3,250 bonds were issued, May 1st, 1881, it is clear that the trustee failed in the discharge of its implied duty or obligation by not requiring a specific statement as to the purposes for which they were to be used, and seeking the instruction of the court, for its own protection, under circumstances which indicated a serious impairment, at the outset, of the mortgage security.

It is apparent that at this time no portion of the contem-

plated railroad had been constructed, and that the only assets on which the mortgage lien could presently operate were the franchises and land grant of the Willamette Railroad Company, and the right of that company, by payment of six hundred thousand dollars, to become the owner of the 850,000 acres of land included in the grant of the wagon road company.

It would seem too clear for argument that the trustee rested under the implied duty to the future bondholders to see that the only assets then available to feed the security should be acquired by the railroad company, or, failing in that, to refuse issuing bonds unless ordered to do so by the court.

It also appears in the admitted facts of the case that the bonds, or the proceeds of the bonds, were to be advanced to the railroad company only at the rate of $25,000 per mile, and that the first issue of 3,250 bonds was to be devoted, primarily, to the payment of the six hundred thousand dollars for the land grant of the wagon road company and the construction of the first one hundred and thirty miles of the railroad from the ocean eastward. Not only was this first advance of bonds made upon an insufficient statement, but between May 1st, 1881, and June, 1885, the remainder of the 15,000 bonds was issued in three additional lots by the trustee to the railroad company on similar statements and with full knowledge that the one hundred and thirty miles of railroad from the ocean eastward had not been completed, nor had $25,000 a mile been expended on such portion as was built. In fact, the provisions of the fourth and fifth subdivisions of the mortgage, imposing upon the trustee the implied obligation to issue or pay out the bonds, or their proceeds, to the railroad company upon statements which were to disclose the manner in which they were to be used, were utterly ignored, and the bonds issued without regard to the land grant of the wagon road company, or the mileage of the constructed railroad.

The subsequent history of this enterprise shows how dis-

astrous this action of the trustee was to bondholders.    The Oregon Pacific Railroad Company made default in the payment of its coupons October 1st, 1890 ; the trustee began an action to foreclose the mortgage and the president of the railroad company was appointed receiver; thereafter receiver's certificates to the amount of eight hundred and fifty thousand dollars were issued ; on December 22d, 1894, the mortgaged premises were sold under a decree of foreclosure and were purchased for the sum of one hundred thousand dollars; a deed was executed to the purchaser, conveying all the property upon which the mortgage was a lien ; this purchase was solely in the interest of the purchaser, and the rights of bondholders and stockholders were extinguished.

The meagre and paltry assets of this railroad company, as disclosed by the admitted facts, is a striking illustration of how bonds of the par value of fifteen million dollars can be marketed upon security utterly inadequate.

It was to prevent bondholders from drifting into such a situation that the railroad company covenanted to furnish the trustee, when calling for bonds, or their proceeds, with a statement " declaring the purpose, or purposes," for which they were to be used, those purposes having been carefully classified in the mortgage.

The question is thus presented, whether the trustee rested under an implied legal duty or obligation springing from the relation of trustee and *cestui que trust*, or whether an implied covenant to that effect can be read into the mortgage under seal.

It is the settled law that in order to imply a covenant in a contract under seal, a manifest and clear intention must appear in the contract that one of the parties shall do the act in regard to which the covenant is to be implied.    (*Hornbostel* v. *Kinney*, 110 N. Y. 94, 99 ; *Zorkowski* v. *Astor*, 156 N. Y. 393, 397, 398.)

As to what is a manifestation of a clear intention that one of the parties shall do the act in regard to which the covenant is to be implied is illustrated in the following cases.

In *Booth* v. *Cleveland Rolling Mill Co.* (74 N. Y. 15) the plaintiffs agreed to give the defendants the exclusive license to manufacture, in certain states, a patented steel and iron rail, the patent of which was owned by the plaintiffs, upon certain specified terms and conditions which related to the royalty to be paid, etc. The defendants were to proceed at once to make said rail as long as it held good as a practicable and reliable rail for use, and it was to be made of good material and in a workmanlike manner. It was held that these conditions in the agreement of license manifested a clear intention that the defendants rested under the implied covenant to manufacture in accordance with these conditions. This covenant was read into the contract under seal, as it was clear upon the face of the contract that this covenant was implied.

Judge ALLEN said in the above case (p. 21): " There is no particular formula of words or technical phraseology necessary to the creation of an express obligation to do or forbear to do a particular thing or perform a specified act. If from the text of an agreement or the language of the parties, either in the body of the instrument or in the recital or references, there is manifested a clear intention that the parties shall do certain acts, courts will infer a covenant in the case of a sealed instrument, or a promise if the instrument is unsealed, for non-performance of which an action of covenant or assumpsit will lie. It is a cardinal principle that every agreement or covenant must be interpreted according to its peculiar terms, and so as to carry out the intent of the parties, and it follows that the ruling upon, and the interpretation of, one agreement will seldom aid in the construction of another, except as it may illustrate some general rule of interpretation applicable to both."

In *Mansfield* v. *N. Y. C. & H. R. R. R. Co.* (102 N. Y. 205) it appeared that the plaintiff entered into a contract with the defendant for the construction by the former of the superstructure of an elevator for the latter. The contractors agreed to commence the work within five days after notice from

defendant's engineer that the foundations were ready and to complete the elevator ready for use within five months thereafter. The defendant served the notice required, but at the time of such service the piers and foundation walls were not completed. Notwithstanding this omission on the part of the defendant, it was sought to put the plaintiff in default by reason of not completing the superstructure within five months after receiving the notice.

RUGER, Ch. J., after a full examination of the authorities, said : "Looking at this contract in the light of decisions referred to, it would seem that the plainest principles of justice required the implication of a covenant on the part of the defendant to prepare the foundations in question so as to have them in a condition to enable the contractors to prosecute their work to the utmost advantage and economy, before giving the notice which set the time limited for their completion in motion. Any other construction would destroy the mutuality of the agreement and put it practically in the power of one party to defeat performance by the other." Thereupon, an implied covenant was read into this contract under seal.

In *New England Iron Co.* v. *Gilbert Elevated R. R. Co.* (91 N. Y. 153), in a contract between the plaintiff and the defendant, the plaintiff agreed to furnish the materials and erect on masonry, to be furnished by defendant, an elevated iron railway in the city of New York. The plaintiff was to commence work on being notified by defendant's president that defendant's capital stock was subscribed and thirty per cent paid in. The defendant agreed to designate the order in which the work was to be commenced and completed and to pay therefor a specified price. The plaintiff was not required to prosecute the work any faster than money to be paid therefor should be furnished by the defendant. The defendant subsequently, without giving the prescribed notice, entered into a contract with another corporation for the construction of the work. It was held that although the defendant did not in express terms undertake to do the act or give the notice required to set the plaintiff in motion, a promise to do

so, or at least a promise that the plaintiff should have the building of the railway, in case that enterprise was prosecuted by defendant, was implied.

In *Hudson Canal Co.* v. *Pennsylvania Coal Co.* (8 Wall. 276) the Supreme Court of the United States, in refusing to read into a contract under seal an implied covenant, uses this language (p. 288) : " Undoubtedly, necessary implication is as much a part of an instrument as if that which is so implied was plainly expressed, but omissions or defects in written instruments cannot be supplied by virtue of that rule unless the implication results from the language employed in the instrument, or is indispensable to carry the intention of the parties into effect ; as where the act to be done by one of the contracting parties can only be done upon something of a corresponding character being done by the opposite party, the law in such case, if the contract is so framed that it binds the party contracting to do the act, will imply a correlative obligation on the part of the other party to do what is necessary on his part to enable the party so contracting to accomplish his undertaking and fulfill his contract."

To the same effect is *Hale* v. *Finch* (104 U. S. 261). At page 269 the court says : " But according to the authorities, including some of those above cited, and from the reason and sense of the thing, a covenant will not arise unless it can be collected from the whole instrument that there was an agreement, or promise, or engagement, upon the part of the person sought to be charged, for the performance or non-performance of some act."

In the light of these authorities, there is nothing in the language of the mortgage before us to warrant reading into that instrument an implied covenant, imposing upon the trustee the affirmative obligation, already discussed, in paying out these bonds or their proceeds to the railroad company.

The covenants contained in the mortgage on the part of the railroad company are made with its future bondholders, and to these covenants the trustee is a stranger ; consequently, the principle declared in the cases cited does not apply, as there

is nothing in the language of these covenants that can be ascribed to the defendant and construed as implying a correlative covenant which should be read into a sealed instrument as binding the trustee.

It is to be observed that the person against whom an implied covenant is read into a sealed instrument is an active covenanting party therein, and the question is whether on considering the language of the covenants the writing contains, others must not be implied therefrom, of a correlative character, in order to carry out the intention of the parties.

In the case at bar the defendant, the Farmers' Loan and Trust Company, is named as party to the mortgage, not as entering into its positive covenants, but for the purpose of accepting the trust therein created.   In executing that acceptance the defendant created the relation of trustee and *cestui que trust* between it and the future bondholders.   It is in this relation equity finds a foundation upon which to rest its jurisdiction and imply duties and obligations, which, in the absence of any covenants in the mortgage, entered into by the defendant, cannot be read into that instrument.

It, therefore, follows that an implied duty or obligation existed requiring the trustee to advance to the railroad company the bonds, or their proceeds, upon proper demands and specific statements of the latter, indicating a purpose to use the same in accordance with the provisions of the mortgage.

It seems only reasonable that the bondholders should be protected by the positive covenants of the mortgagor and all of those obligations that may be fairly implied as resting upon the trustee.   It is unfortunately the case that the duties of trustees under railroad and other mortgages are too often performed in a perfunctory manner unless there is default in the payment of interest and the trustees are called upon to take possession of the property and foreclose the mortgage in pursuance of the express duties imposed upon them.

The strict enforcement, when possible, of these implied obligations imposed upon trustees would be salutary and timely.

It follows that this action cannot be considered as brought upon the mortgage as a sealed instrument, but on this implied duty or obligation springing from the trust relation.

This being so, the twenty years' Statute of Limitations, relating to an action upon a sealed instrument, does not apply, but the cause of action falls within the provisions of section 388 of the Code of Civil Procedure, which is general in its character, to the effect that " An action, the limitation of which is not specially prescribed in this or the last title, must be commenced within ten years after the cause of action accrues."

The trust company delivered the last lot of bonds to the railroad company in the month of June, 1885, and these actions were begun in February, 1899. The statute must be deemed to have been set running by this last delivery of the bonds.

The learned Appellate Division in sustaining the demurrers of defendant to the replies of plaintiffs and dismissing the complaints upon the merits, held (1) that there were no duties imposed upon the trustee independently of the mortgage; that these actions are to be regarded as brought upon a sealed instrument, and can only be cut off by the twenty years' Statute of Limitations ; and (2) that the complaints taken as a whole contain no enforceable cause of action against the trust company.

It was, therefore, ordered that the judgments of the Special Term dismissing the complaints should be affirmed.

While we are unable to agree with the views expressed by the Appellate Division in regard to the nature of the cause of action, or the duties of the trustee, we concur in the result reached that the complaint was properly dismissed, placing our decision upon the fact that the cause of action is cut off by the ten years' Statute of Limitations.

In *Frishmuth* v. *Farmers' Loan & Trust Co.* (95 Fed. Rep. 5) the Circuit Court of the United States for the southern district of New York, in construing the mortgage now before us, held that the duties assumed by a

trustee to a railroad mortgage, as made for the benefit of bondholders, are not only those which are defined by the instrument, but others are superimposed on the trustee created by the relation of the parties and the situation of the trust fund, but that the cause of action to enforce the latter was cut off by the Statute of Limitations, for the reason that fourteen and one-half years had elapsed since the delivery of the last lot of bonds by the trustee to the railroad company. This judgment was affirmed by the Circuit Court of Appeals in 107 Federal Reporter, 169.

As already stated, one of the plaintiffs is the owner of twenty bonds purchased in 1887, and the other of five bonds purchased in 1889.

We thus have before us the owners of only twenty-five out of fifteen thousand bonds, who purchased long after the trustee had issued all the bonds to the railroad company.

The breach of trust by the trustee existed at the time these bonds were acquired, and a reasonable examination of the public records and *locus in quo* in the state of Oregon would have disclosed a condition of affairs calculated to satisfy a reasonable man that the securities were of little or no value. The land grants would have been matter of record if existing, and the length of the constructed and equipped railroad was readily ascertainable.

The complaint alleges, and it is admitted, that the construction of the railroad was commenced about July, 1881, and only seventy-two miles were completed in October, 1884; that this work was so defectively and cheaply done as not to cost twenty-five bonds, or the proceeds thereof, per mile; that it was not until 1886 that the railroad was extended ten miles to Albany, Linn county, Oregon; that in 1889 the railroad was extended into the Cascade mountains, a point distant about one hundred and forty-two miles from Yaquina bay, when the work of construction was stopped and never resumed; that this total mileage of railroad was so defectively and cheaply constructed and equipped as to be substantially worthless and of no value for the security of bondholders.

The judgments appealed from should be affirmed, with costs.

MARTIN, J. (dissenting).   The trust deed in this case was in form and effect a tripartite agreement between the Oregon Pacific Railroad Company of the first part, the Farmers' Loan and Trust Company of the second part, and the Willamette Valley and Coast Railroad Company of the third part. By its terms the parties of the first and third parts transferred to the defendant in trust for the purposes therein mentioned all the property and franchises owned by them.   The party of the first part covenanted and agreed that when the bonds provided for by such trust deed had been executed it would deposit them with the defendant to be issued and certified as the same should be sold or otherwise disposed of.   The defendant was authorized to certify and issue such bonds for sale when required by the party of the first part, but the net proceeds realized therefrom were to be paid over to and remain in the hands of the defendant for the purposes set forth in that instrument.   There was also an express provision therein that such proceeds should be paid out only on the written order or request of the executive committee or the board of directors of the party of the first part, such orders or requests to include a written statement of the purpose for which such proceeds were to be appropriated.   It then provided for the issuing of bonds to be directly applied to the purposes of the corporation without their conversion, but required that the trustee should be furnished with a like written order and request which should include a written statement declaring the purposes for which such bonds were to be employed, and only in such case was the trustee authorized to certify, issue and deliver such bonds.

The question here presented is whether these provisions of the trust deed, which clearly imposed upon the defendant the duty of retaining the bonds executed and the net proceeds of those issued and sold until called for, for the purposes and in the manner therein stated, constituted a covenant to that

effect upon the part of the defendant, or whether such a cove-
nant is necessarily implied from the provisions of that instru-
ment.   If this action is upon a covenant therein, either express
or necessarily implied, then, obviously, it is upon a sealed
instrument, the twenty years' Statute of Limitation applies, and
the complaint should be sustained.   By this deed the defend-
ant was constituted a trustee, and signed and executed it for
the purpose of signifying its acceptance of the trust therein
and thereby created.   The nature of the trust, which the
defendant covenanted to accept and carry into effect, included
the receipt and issuing of the bonds executed by the party of
the first part, and the receipt and retention of the proceeds of
such bonds as were sold until paid out or delivered in accord-
ance with the express terms of the instrument by which the
trust was created.   It is said that while the defendant is liable
to the bondholders for its misconduct in disposing of the
bonds or their proceeds contrary to the provisions of the trust
deed, yet that such liability arises only from its implied duty
as trustee to the bondholders.   The relation of trustee and
*cestui que trust,* if it exists, arose from and was created and
controlled by the provisions of the trust deed, and it appears
to me that the defendant's liability is not dependent upon the
general principle controlling trustees, where there are no special
provisions as to the character of their duties and liabilities,
but is dependent upon the particular provisions contained in
the trust deed under and in pursuance of which it specifically
accepted the trust thereby conferred upon it.   If there was
no covenant, express or implied, by the defendant to deliver
the bonds and pay out the proceeds in the manner and in
accordance with the requirements of the trust deed, then there
was no covenant whatever to return the bonds or the proceeds,
or to account therefor.   I think it is quite clear that it cannot
be properly held that there was no express or implied cove-
nant on the part of the defendant to apply the bonds or their
proceeds to the purposes, in the manner, and subject to the
limitations contained in that instrument.   Manifestly, the sole
purpose of the mortgage and of the bonds to be issued was

to secure funds to be applied to the particular purposes specified, and to limit their application to such purposes alone. That it was the plain intent of the parties to enter into covenants whereby the bonds and the proceeds thereof should be held by the defendant in trust, under and subject to the provisions and limitations of that agreement, and that they should be so retained by it until all the provisions thereof in that respect were complied with, seems to me quite obvious from the language therein employed. If from the text of an agreement under seal, either in the body of the instrument or in the recitals or references, there is manifested a clear intention that one of the parties shall do certain acts in a particular and specified manner, a covenant to that effect will be implied, for the non-performance of which an action of covenant will lie. The meaning of a contract is to be gathered from a consideration of all its provisions, and the inferences naturally derivable therefrom, as to the intent and object of the parties in making it, and the result which they intended to accomplish by its performance. The object of the parties to the trust deed and the actual result which they intended to accomplish was to secure money or bonds to be applied to the particular purposes specified, and to prevent their use for any other purpose whatsoever. To that end it was expressly provided by the instrument itself that the property of the other parties should be transferred to the defendant, and that bonds should be executed and delivered to it, to be issued by it only upon the assurance that they or their proceeds would be thus applied. It is true that in order to imply a covenant in a contract under seal, the manifest and clear intention must appear in the contract that one of the parties shall do or omit the act in regard to which the covenant is to be performed. (*Booth* v. *Cleveland Rolling Mill Co.*, 74 N. Y. 15; *Mansfield* v. *N. Y. C. & H. R. R. R. Co.*, 102 N. Y. 205; *New Eng. Iron Co.* v. *Gilbert El. R. R. Co.*, 91 N. Y. 153; *Hornbostel* v. *Kinney*, 110 N. Y. 94; *Bruce* v. *Fulton Nat. Bank*, 79 N. Y. 154; *Zorkowski* v. *Astor*, 156 N. Y. 393.)

As to the rule applicable to the construction of this instrument, I agree with my brother Bartlett, that a covenant on the part of the defendant, of the nature suggested, is not to be implied unless it was the clear intention of the parties that the defendant should not issue the bonds or pay out the proceeds except upon a full compliance with the terms of the trust deed or mortgage in that respect. It appears to me, however, that it was their plain intention, as disclosed by the language and provisions of the trust deed, that the bonds or their proceeds should be employed only for the purposes specifically mentioned therein; that to carry that intent into effect it was expressly provided that they were to be used for that purpose only, and a method of procedure to be adopted by the defendant was provided which would furnish it with information of the purposes for which they were to be employed, thus enabling it to carry out such intent. The evident purpose of these provisions was to protect the railroad company and its bondholders against any attempt on the part of its officers or others to misapply the bonds or their proceeds, and the defendant was made a party to that agreement to prevent that result. If these provisions were not intended as a covenant to bind the defendant and restrain it from delivering the bonds or paying out the proceeds thereof, except upon the conditions and only in compliance with the terms of the trust deed, they were practically meaningless and afforded no protection to the company or its bondholders. The trust imposed upon the defendant, which it in terms accepted and which, at least by implication, it covenanted to perform, was not a general one by which it was authorized to issue the bonds and transfer them or the proceeds to the party of the first part or to others whom it should designate, or to dispose of the proceeds in that manner, but it was a trust which, while it conferred upon the defendant the property of the other parties to the agreement, yet specifically restricted the defendant as to the use to be made of such bonds or proceeds, and required it to apply them only to the purposes specially enumerated, to be ascertained in the manner provided. Such being the nature of the

trust conferred upon the defendant, it is obvious that it was the intent of the parties that it should be carried out according to the spirit and purpose of those provisions. If that was not the intent of the defendant, but it intended to ignore or disregard the provisions of the agreement and permit the entire property of the corporation to be squandered, then it intended to commit a fraud upon the bondholders and others who were interested in the contemplated railroad. We cannot believe that such was the defendant's intent, but feel confident that the intent and purpose of the defendant, as well as the other parties to the agreement, was that these provisions should be fairly and conscientiously carried into effect. · I am of the opinion that when the defendant executed the trust deed for the avowed purpose of signifying its acceptance of the trust therein and thereby created, it in effect agreed and intended to agree and bind itself to carry into effect and comply with the terms and provisions of the trust therein provided for, subject to and including all the conditions, provisions and limitations contained therein, and that a covenant to that effect is necessarily implied.

I vote for reversal.

PARKER, Ch. J., CULLEN and WERNER, JJ., concur with BARTLETT, J.; O'BRIEN and VANN, JJ., concur with MARTIN, J.

Judgment affirmed. _____