T. B. SWEET V. THE MONTPELIER SAVINGS BANK AND
TRUST COMPANY.

No. 14,450.    (84 Pac. 542.)

SYLLABUS BY THE COURT.

1. TRUST COMPANIES—*Misappropriation of Funds Collected—
Liability of Managing Officers*.  When the managing agents
of a trust company mingle money collected for another with
the current funds of the company, for use in its business,
in violation of the express directions of the owner to remit,
or knowingly permit their subordinates so to do, and the
fund is thereby lost, such agents will be personally liable to
the owner therefor, although at the time of such misappro-
priation it was the intent of such managing agents to ac-
count for and return the money to the owner upon demand.

2. EVIDENCE—*Admissible against One Codefendant—Failure to
Limit*.  Where two or more persons are defendants in the
same action, and the plaintiff offers evidence competent as
to one and incompetent as to another, and the latter offers
an objection, which is overruled and the evidence admitted,
and the court omits to limit by proper instructions the ap-
plication of such evidence to the defendant against whom it
properly applies, *held*, that the overruling of the objection
was proper, and the omission to instruct as above stated can-
not be deemed material error, when the objecting defend-
ant does not request an instruction making such limitation.

3. —— *Sufficient to Sustain the Verdict*.  Evidence in this
case examined and held to be sufficient to sustain the verdict.

Error from Shawnee district court; ALSTON W.
DANA, judge. Opinion filed February 10, 1906.  Af-
firmed.

*Rossington & Smith,* and *Samuel Barnum,* for plain-
tiff in error.

*J. W. Gleed,* and *J. L. Hunt,* for defendant in error;
*Gleed, Ware & Gleed,* of counsel.

The opinion of the court was delivered by

GRAVES, J.: This action was brought by the defend-
ant in error against T. B. Sweet, George M. Noble, and
E. M. Shelden, president, vice-president, and treasurer,

respectively, of the Trust Company of America, with the purpose of holding them personally responsible for the conversion of the proceeds of a collection made by the corporation of which they were the principal officers. Judgment was recovered against Sweet alone, and he brings the case here.

This case has been here before. It was reported in 69 Kan. 641, 77 Pac. 538. The law relating to the personal liability of the active managing officers of a trust company for the misappropriation and conversion of trust funds by the company was then considered by this court, and the ruling made was intended to apply specially to the facts of this case, which were practically the same then as now. The scope of that decision will be better understood by a brief reference to the facts involved.

In June, 1898, the trust company had the note and mortgage in question for collection, and on the second of that month the treasurer of the company, Shelden, wrote to the plaintiff for proper releases, as the collection was then about to be made. The letter closed with the following words: "Return it to us with all papers and we will make the collection and remit." On June 13, 1898, this request was answered by the following letter: "I enclose herewith the release asked for in the J. E. Weaver loan, and bond and mortgage, due June 1, for collection and remittance." Upon receipt of this Shelden wrote as follows: "We have yours of the 13th instant, enclosing the J. E. Weaver papers, due June 1, for collection." The collection was made, but instead of remitting the proceeds as directed the company, without giving notice that the collection had been made, credited the account of plaintiff therewith, and retained the same as a part of its own funds. In September following the assets of the trust company, including the proceeds of this collection, passed into the hands of a receiver.

It is contended that the retention of this fund by the trust company amounted to a conversion thereof,

for which the officers of the company are personally liable. It is claimed by the officers sought to be charged with this conversion that these two corporations had been doing business together for many years; that it had been the uniform usage in the conduct of such business, where there were no directions otherwise, for the trust company, when it made a collection, to notify the plaintiff thereof, and then reinvest or remit as might be directed; that the defendants had overlooked the foregoing correspondence concerning the remittance of this collection, and had waited for instructions; that this want of diligence and omission to obey the instructions of the plaintiff were not the result of any bad faith or wrongful intent, but a mere indifference and oversight; and that the whole transaction was the work of subordinate officers or employees in the office, of which the defendants had no actual notice.

The case when here before was reversed on account of an instruction given by the district court, which reads:

"If the defendants were, respectively, president, vice-president and treasurer of the Trust Company of America, a corporation, and the principal place of business of said company was in the city of Topeka, and the defendants had personal charge and supervision of the office and the business affairs of said company, directing and managing its affairs, receiving and disbursing moneys that came into its possession, then the defendants would be held to have knowledge of all the business affairs of the corporation which came under their personal observation and knowledge, of all the business affairs of the corporation which they might have known by the exercise of ordinary diligence in the conduct of the business affairs of the company." (69 Kan. 641, 649, 77 Pac. 538.)

The objectionable feature of this instruction is that it made the officers of the company personally liable for the misappropriation of trust funds by their company, whether they had actual knowledge thereof or

not, if by the use of ordinary diligence they might have known. This court held substantially that managing officers of a corporation cannot be held personally liable for the conversion of funds to the use of the corporation by subordinate officers, unless the transaction constituting such conversion was actually known to and acquiesced in by such managing officers. In that case Mr. Justice Atkinson used the following language in the opinion:

"But where there were sent to a corporation a note and mortgage, with instructions to collect the same and remit, and the money was collected but not remitted, a recovery may be had by the owner of the note and mortgage against the executive officers and managing agents having the active management, charge and control of its affairs for the conversion of the money by them for the use of the corporation; and a recovery may be had against them for such conversion of the money by subordinates with the knowledge and acquiescence of such officers and managing agents. . . . It is a well-known fact that much of the business of this day and age is transacted by corporations, many of them employing numerous persons in the various departments of the work in which they are engaged. Large amounts of money and property are daily handled by the employees of such corporations. The instruction complained of casts upon the executive officers and managing agents of such corporations an unreasonable degree of liability. It would be a great hardship to hold them liable for acts of misappropriation of money or property by subordinates of which they had no actual knowledge. The rule of personal liability of such officers for the misappropriation by subordinates adopted by the trial court is too far-reaching in its scope." (69 Kan. 641, 649, 77 Pac. 538.)

At the last trial of this case in the district court the plaintiff in error requested the court to give two instructions which read:

"(2) The collection of the money by the Trust Company of America was rightful, and said company was authorized to make such collection. It was the duty of said Trust Company of America to remit said money

Sweet v. Savings Bank.

when called for by the plaintiff, and for failure so to do it could be held liable in a proper action; but neither of the defendants is individually liable to the plaintiff for the mere failure or neglect to remit said money."

"(5) In order to render either one of the defendants liable in this action the burden of proof is upon the plaintiff to show affirmatively an actual personal knowledge of some request or direction by or from the plaintiff to remit the money in question and some actual intent to convert said money to the use and benefit of the Trust Company of America."

The court refused this request and gave the following:

"(7) Where the owner of a note and mortgage forwards the same to a person for collection, with instructions that the money collected thereon shall be remitted upon collection, then I instruct you that the money so collected, when in the hands of the person who collected it, constitutes a trust fund and belongs to the owner of the note and mortgage, and the person so collecting it is not authorized to appropriate the money to his own use."

"(13) . . . That the Trust Company of America appropriated the money so collected to the use of said company without the knowledge or consent of the plaintiff; that defendants had knowledge that the money so collected was a trust fund, and of its misappropriation; that the defendants, or either of them, participated in the misappropriation of the money, or knowingly permitted subordinates in the office to misapproprate the money to the Trust Company of America, and acquiesced in such misappropriation, then I instruct you that the defendants, or such of them as participated in the misappropriation of the money or knowingly acquiesced in the misappropriation of the money by subordinate employees, would be liable in this action."

In these instructions the court denominated the fund in question a "trust fund," and stated the elements of which it is composed, one of them being that the collection when forwarded was accompanied with directions to remit. As to the knowledge necessary to make the defendants liable the court said, in substance,

that they must have known that the money collected was a "trust fund," and misappropriated to the use of the trust company. If they possessed this knowledge they would necessarily know of the directions to remit, and that a conversion was intended. We think the instructions given cover all that was necessary to be stated to the jury.

In the argument it was claimed that by the refusal to give the instructions requested the court failed to present to the jury the question of conversion with intent to defraud, and apparently this is the real objection made to the court's instructions. We do not think this idea is necessarily conveyed by the language used in the instructions requested, nor do we think that a fraudulent intent is an essential element of this case. When the managing agents of a trust company mingle money collected for another with the current funds of the company, for use in its business, in violation of the express directions of the owner to remit, or knowingly permit their subordinates so to do, and the fund is thereby lost, such agents will be personally liable to the owner therefor, although at the time of such misappropriation it was the intent of such managing agents to account for and return the money to the owner upon demand.

We think that this court in its former decision in this case touched the limit of liberality in favor of trust-company officers. The rapidly increasing volume of important business transacted between persons widely separated from each other, wherein trust companies and similar agencies are necessarily employed, demands that the officers of such agencies be held to a strict performance of the duties confided to them, and we do not wish further to limit the rule of their responsibility already adopted.

The plaintiff in error makes complaint that the trial court admitted a letter written by defendant Noble to A. W. Ferrin, treasurer of the plaintiff. The letter was written after the assets of the trust company had

passed into the possession of a receiver. When the letter was offered Sweet, Noble and Shelden were co-defendants. The letter was admissible against the writer, Noble, but not against Sweet, his codefendant. Proper objection was made by Sweet to its admission as incompetent and not binding on him, but the objection was overruled. As the evidence was proper against Noble, the court could not have sustained the objection and kept the evidence from being read to the jury. The most the court could have done would have been to instruct the jury then, or later, that it could only be considered as to Noble. Such an instruction would have been proper, but it was not given. No request was made for such an instruction. The letter was properly admitted in the case. If any error was committed it was because of the failure of the court to limit its application. Such an instruction, however, is not of a general nature, such as the law requires the court to give without request. As no request was made we cannot say that the omission was material error. In the absence of such a request at the close of the evidence, a court may assume that the objection has been waived.

Another objection made by the plaintiff in error is that the verdict against him is not sustained by the evidence. After a careful examination of the evidence we think it not only justified the verdict against Sweet, but would have sustained one against his codefendants. Sweet was president of the company; a large part of its business passed through his hands and was brought to his personal attention. He had ample opportunity to know about the transaction in question. It is true that this was one of a mass of items presented to him, and might have failed to make any distinct impression upon his mind. Whether it did or not was a proper question for the jury. The judgment is affirmed.

All the Justices concurring.