## BROWNING v. FIDELITY TRUST CO.

(Circuit Court of Appeals, Third Circuit.  May 1, 1918.  Rehearing Denied
June 13, 1918.)

### No. 2347.

1. MORTGAGES ⟐⟐209—TRUSTEES—DUTY OF.

   Where a mortgage authorized the trustee, while there should be no
   existing default to its knowledge, to release certain portions of the mort-
   gaged premises on payment of fixed sums, the trustee was under no duty
   to inquire concerning defaults upon obligations other than upon the
   mortgage obligation of which it was trustee.

2. BANKS AND BANKING ⟐⟐315(2)—TRUST COMPANIES—KNOWLEDGE OF AGENT
   —IMPUTABLE TO PRINCIPAL.

   Where a trust company, which was trustee under a mortgage securing
   bonds, conducted the usual business of such an institution by departments
   having to do separately with banking, trusts, mortgages, etc., knowledge
   of a teller in the banking department of the mortgagor's default in the
   payment of interest coupons on the bonds secured is imputable to the
   trust company as trustee.

3. MORTGAGES ⟐⟐209—TRUSTEE—BREACH OF TRUST DUTY.

   While the parties to a trust can, by agreement, limit their liability, a
   trustee named in a mortgage cannot contract for immunity from liability
   for acts of gross negligence or acts done in bad faith.

4. WORDS AND PHRASES—"BAD FAITH."

   "Bad faith," though an indefinite term, differs from the negative idea
   of negligence, in that it contemplates a state of mind affirmatively
   operating with a furtive design, or some motive of interest or ill will.

   [Ed. Note.—For other definitions, see Words and Phrases, First and
   Second Series, Bad Faith.]

5. NEGLIGENCE ⟐⟐13—"GROSS NEGLIGENCE."

   The elemental idea of negligence is failure or omission, while negligence
   that is gross involves an additional and affirmative element of intent,
   and may be defined as the intentional failure to perform a manifest duty,
   in reckless disregard of the consequences.

   [Ed. Note.—For other definitions, see Words and Phrases, First and
   Second Series, Gross Negligence.]

6. MORTGAGES ⟐⟐209 — RELEASE — GROSS NEGLIGENCE OF TRUSTEE — BAD
   FAITH.

   Where a mortgage securing bonds authorized the trust company, act-
   ing as trustee, to release portions of the premises if it had no knowledge of
   any default, and the trust company, though chargeable with knowledge
   of the mortgagor's default in payment of interest coupons on certain of
   the bonds, released portions of the premises, *held* that, under the circum-
   stances, it was not guilty of gross negligence or bad faith, and hence was
   not liable, as the mortgage excepted it from liability for the negligence
   of employés.

Appeal from the District Court of the United States for the District
of New Jersey; Thos. G. Haight, Judge.

Suit by Clarence P. Browning against the Fidelity Trust Company.
From a decree for defendant, complainant appeals.  Affirmed.

Edward F. Clark and Roger Hinds, both of New York City, for ap-
pellant.

Louis Hood and Francis Lafferty, both of Newark, N. J., for appel-
lee.

---

⟐⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

. WOOLLEY, Circuit Judge.   The principal question on this appeal concerns the exemption from liability afforded a trustee of a mortgage by its immunity clause for a breach of duty under the attendant circumstances.

The facts are substantially as follows:

United Realty & Mortgage Company acquired for development and sale a large tract of land situate on the Hackensack River.   On September 22, 1911, this corporation executed and delivered to the defendant as trustee a mortgage on its premises to secure a bond issue for $300,000.   Of this issue, bonds to the amount of $75,000 were held by the trustee to discharge underlying obligations as they matured; and bonds to the amount of $90,000 were used in purchasing lands covered by the mortgage, of which number the plaintiff held $75,000.   The remaining bonds were held for different purposes, one of which was their use as the consideration to be given the trustee at a named rate per acre for the release of land from the lien of the mortgage, when desired in the progress of the business.

On September 17, 1912, the trustee released a tract of 7 acres; and on July 10, 1913, it released a tract of 38 acres, which included the river front.

The mortgagor defaulted in interest payments, whereupon the plaintiff, on August 14, 1913, made formal demand upon the trustee for foreclosure of the trust mortgage.   Foreclosure suit was instituted resulting in a decree and sale of the mortgaged premises less the two portions previously released.   At the sale, the plaintiff, in order to protect his interest, purchased the property subject to its prior encumbrances.

The plaintiff then brought this suit and by his bill sought to charge the defendant with the value of the two tracts of land it had released, on the ground that its action in each instance was a violation of its trust duty, under circumstances, which, briefly stated are these:

The clause of the mortgage conferring upon the mortgagor the right to demand and upon the trustee authority to execute releases of the mortgaged premises from the mortgage lien provides:

"(5) The Realty Company while it shall be in possession of the mortgaged premises, *and while there shall be no existing default to the knowledge of the trustee* in respect to the payment of the principal or interest of any of the said bonds or in the performance of any of the covenants herein, by it to be kept and performed, shall have the right at any and all times to convey and exchange freed from the encumbrances and trusts hereby or all or any of the real estate or property held by it hereunder and which is subject to this mortgage," (paying the trustee for the release thereof the sum of $500 per acre for each acre released, payment being made, at the option of the Realty Company, with the bonds of the mortgage at their face, thereafter to be cancelled by the trustee.)   "The trustee shall execute good and sufficient release from time to time as may be requested, *in the manner herein provided*, from the Realty Company. * * * "

[1] On September 17, 1912, when the trustee executed the first release, the mortgagor was in default of interest on prior encumbrances.

The plaintiff maintains that with this default existing, the trustee was without power, under the quoted provision, to execute the release, and, because of its failure to inquire and learn of the default, it committed a breach of a trust duty by which it is chargeable with the value of the property released. The District Court decided adversely to this contention, under the provision of the mortgage which authorizes a release "while there shall be no existing default *to the knowledge of the trustee*" and under its construction that the mortgage imposed no duty upon the trustee to inquire concerning defaults upon obligations other than upon the mortgage obligation of which it was trustee, and also upon the evidence, which did not suggest, even remotely, that the trustee had knowledge of the default. Being of the same opinion, we affirm this finding.

[2] The trustee is a trust company conducting the usual business of such an institution by the customary means of departments having to do separately with banking, titles, trusts, savings, mortgages, and real estate. In its banking department, it pays interest coupons when deposits are made against their presentation.

On January 6, 1913, being a date long prior to the execution of the second release, the plaintiff presented the coupons of his bonds due January 1 to the paying teller of the trustee's banking department and demanded payment. The paying teller refused payment, explaining that the mortgagor had deposited no money with which to pay them. On January 15, the plaintiff, in company with his attorney, again presented his coupons and made formal demand for payment, which again was refused for the same reason. On July 2, 1913, the plaintiff presented to the same teller the July coupons then just matured and also the January coupons upon which payment had been refused. Payment of both was refused because no funds had been deposited to pay them. On July 10, the trustee, upon request made by the mortgagor on July 7, executed the second release, with full "knowledge" (as the plaintiff claims) of the "existing default" in the payment of interest coupons of both maturities. This he contends was a violation of a trust duty which made the trustee liable for the value of the lands released. The District Court found against the plaintiff. From the decree dismissing the bill, the plaintiff took this appeal.

It is to be noted that this is a suit by a bondholder against the trustee of a mortgage to recover damages, in effect, for breach of a trust duty. Recovery by the bondholder therefore is predicated upon the trustee's liability for what it did. Liability of the trustee for executing the release, when concededly there was an existing default in interest payments, depends first upon the question, whether the trustee's execution of the release was in fact a breach of its trust duty. This question is not to be determined by the general terms of the mortgage, which, under any construction, clearly contemplate that no release shall be executed while there is an existing default in interest payments, but it is to be determined from the provisions of the mortgage which constitute the contract of the bondholders with the trustee, imposing trust duties upon it and relieving it from liability for failing to perform certain of them.

The trustee was empowered and required to execute releases when requested by the mortgagor, provided there was at the time no existing default in the payment of interest of which the trustee had knowledge. The trustee's knowledge of an existing default, therefore, is the consideration which determines primarily the trustee's liability for exercising the power. Such knowledge the plaintiff maintains the trustee had by reason of the knowledge of the paying teller, its officer whose business it was to be informed and to learn of defaults when they occurred.

. While being bound to admit the existing default at the time of the release and to admit also the knowledge thereof on the part of the paying teller of its banking department, the trustee maintains that its trust department, which alone was charged with the performance of the mortgage trusts, had no knowledge of the existing default, and, therefore, it, the corporate trustee, acting through its trust officers without knowledge of the default, committed no breach of trust.

On the bare question of knowledge we agree with the learned district judge that the trustee cannot thus divide itself into units or parts and cannot escape liability, when based upon knowledge, because one of its parts was without it while another possessed it. Clearly the knowledge of the paying teller that default had been made in interest payments was knowledge chargeable to the corporation itself. This knowledge, if not actual in the sense of being complete in detail, was quite sufficient to put the corporation on inquiry, which, had it been made, would have revealed the actual default. We therefore agree with the learned district judge that knowledge of the default was chargeable to the trustee, and that the execution of the release, with the knowledge of the existing default imputed to it, constituted technically a violation of the trustee's duty, occasioned either by the negligence of one of its officers or by itself, for which it is liable, unless there is some provision in the mortgage relieving it of liability. Such relief from liability the trustee claims is to be found in the immunity clause of the mortgage, which forms a part of the contract between the bondholders and trustee. This clause provides:

"(14) As a condition precedent to the acceptance of the said trust by the Trustee, * * * it is further stipulated and agreed by and between the parties hereto and all present or future *holders of bonds* secured by these presents, that the Trustee shall not be answerable for any act, default or *neglect* or misconduct of any of its *agents or employés* by it appointed or employed in connection with the execution of any of said trusts; *nor in any other manner answerable or accountable under any circumstances whatsoever except for bad faith.*"

[3-6] It is on the literal terms of this provision that the defendant next relies to avoid liability for breach of duty arising from neglect of its servant or of itself in executing the release after knowledge of interest default had been brought to it. It insists that the provision holds it immune from liability for all acts "whatsoever" with the single exception of acts done in "bad faith," and that the release was not executed in bad faith. The plaintiff admits that as a general proposition parties creating a trust can, by their agreement, limit the liability which is imposed by one and accepted by the other, Tuttle v. Gilmore,

36 N. J. Eq. 617, but maintains, very properly, that the law, dictated by considerations of public policy, determines a point beyond which the parties cannot agree to relieve a trustee from liability for breach of a trust duty. For instance, a trustee cannot contract for immunity from liability for acts of gross negligence or for acts done in bad faith. Such contracts are invalid because repugnant to law.

This being the law, the plaintiff says that the neglect of the trustee's servant to convey his knowledge of the interest default to other servants of the trustee having to do with the execution of trusts of the mortgage, with the consequent default of the trustee itself in executing the release with imputed knowledge, was more than mere "neglect or misconduct" for which admittedly the trustee is relieved from liability by the immunity clause, but was gross negligence, against which the parties could not contract for immunity, or was bad faith, against which they did not contract, or, still further, it was gross negligence amounting to bad faith.

Before applying these terms to the facts of the case, it may be well briefly to discuss their meaning, but in doing this it is important to note, that, as the terms "gross negligence" and "bad faith" are used in the law in many connections and with many shades of meaning, we limit our discussion of these terms to their meaning in contracts such as the one under consideration.

Gross negligence and bad faith are distinguishable. They are sometimes confused because gross negligence may properly constitute evidence from which bad faith may be inferred. 6 Corpus Juris, 881. Bad faith, though an indefinite term, differs from the negative idea of negligence in that it contemplates a state of mind affirmatively operating with a furtive design or some motive of interest or ill will. It contains the element of intent to do wrong in some degree, actual or necessarily inferable. In contracts, it does not mean a breach of faith in the sense of a breach of an undertaking by failing to perform the undertaking. Lewis v. Holmes, 109 La. 1030, 34 South. 66, 61 L. R. A. 274. Such a failure approaches negligence.

The elemental idea of negligence is failure or omission—the failure or omission to do something which should have been done. Negligence that is gross involves the additional and affirmative element of intent to do or wilfulness with which is done the negligent act. The essence of gross negligence may be gathered from familiar definitions. It is defined to be "the intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another," McDonald v Ry. Co. (Tex. Civ. App.) 21 S. W. 775; Schindler v. Ry. Co., 87 Mich. 400, 49 N. W. 670; "such a gross want of care and regard for the right of others as to justify the presumption of wilfulness and wantonness," 2 Thomp. Neg. 1264.

In order to hold the trustee liable for the kind of neglect or default against which it did not and cannot contract, it will be necessary to find these essentials of gross negligence and bad faith in its act of executing the release, otherwise, the immunity clause of the mortgage exempts it from liability.

The circumstances attending the default in interest payments, which have a bearing upon the trustee's act of executing the second release, are the following:

On December 31, 1912 (the day before the maturity of the coupons payable January 1, 1913), the mortgagor wrote the trustee a letter, the pertinent parts of which are:

"Owing to some litigation between owners of some $90,000 worth of bonds, United Realty & Mortgage Company, of which you are Trustee, we have been restrained from paying the coupons due January 1st.

"The only coupons that we desire you to pay are coupons Number 3 cut from the following bonds: [Here follows a list of bonds.]

"We shall put funds at your disposal on the morning of the 2d for the payment of these coupons."

The paying teller showed this letter to the plaintiff at the time he refused payment of the January coupons. The plaintiff, in response, stated to the paying teller that there was no litigation on at that time; that the litigation had passed. Whatever litigation there may have been, no restraining order of a court had in fact been issued.

The mortgagor wrote the trustee another letter, bearing date June 30, 1913, the day before the maturity of the July coupons, in which it said:

"Most of our coupons have been presented at this office heretofore and I suppose will be again. A number of them are now with us. I believe the only ones that will be presented for payment are the following: [Here follows a list of four coupons.]

"We are sending you under this same cover a check for $24 to cover the above amounts.

"If coupon No. 4 cut from bond No. 163, for $15, is presented for payment, we do not wish you to pay it as the bond was obtained by the record owner under misrepresentations and he has promised to return same to the company.

"As I stated above I believe these are the only coupons that will be presented for payment. If for any reason others should come in, I wish you would kindly notify me so that we may deposit with you immediately for payment of the same."

These letters bear stamp marks indicating their receipt by the trust department. They were evidently transferred to the banking department, where they were used by the paying teller in explaining his refusal to pay coupons. After this, so far as the record shows, nothing happened. The paying teller did not inform the trust department or any of the officers of the trust company of the default in interest payments. The evidence, not being refuted, is conclusive that the officers, who, acting for the corporation, executed the release, were in ignorance of the default. It is further shown, likewise conclusively, that, in executing the release, the officers acted solely in what they thought was a correct performance of the trust prescribed by the mortgage, and that they acted entirely without ulterior motive, furtive purpose or design to injure anyone. While the knowledge of the existing default imputed to the corporation extended to its officers, their lack of actual knowledge has a bearing on the intent or motive that entered into the gross negligence and bad faith with which the corporate trustee is charged. Their actual knowledge and their sole knowledge apparently was limited to what was conveyed to them by the letters

quoted. In so far as these letters gave them information, it was, we think, information not that there would be default, but rather that there would be no default. While they were not justified in relying upon the lack of information contained in the letters or in executing the release in view of the knowledge imputed to the corporation for which they were acting, yet it seems clear from these circumstances that their act, though technically negligent, was not characterized by recklessness, indifference, wilfulness or ulterior design, and did not amount to gross negligence or to bad faith, and that, therefore, the corporation for which they were acting is relieved from liability by the broad but valid terms of the immunity clause. Black v. Wiedersheim (C. C.) 143 Fed. 359.

The decree below is affirmed.