TAYLOR *v.* OLIVER.

## Opinion delivered January 27, 1919

1. PRINCIPAL AND AGENT—AUTHORITY—REMITTANCE TO AGENT.—The fact that an agent of a borrower employed to procure a loan remitted to the lender certain payments which were properly credited by the lender does not justify an inference that such agent had general authority to make collections for the lender.

2. SAME—AUTHORITY TO COLLECT NOTES—POSSESSION.—Authority to negotiate a loan raises no presumption of authority to collect such loan in the absence of the securities.

3. MORTGAGES—AUTHORITY OF TRUSTEE.—The mere fact that an agent of the mortgagor was named in the mortgage as trustee gave him no authority to ratify a sale of part of the property by the mortgagor by bringing suit to enforce the lien reserved in the deed to the purchaser, since as trustee he had only powers ⟨c⟩n-ferred by trust deed or necessarily incident to his duties.

4. MORTGAGES—TRUSTEE—AUTHORITY TO CANCEL TRUST DEED.—A trustee in a deed of trust deed, as such, has no authority to cancel the deed of trust of record, without authority from the holder of the debt secured.

Appeal from Perry Chancery Court; *Jordan Sellers,* Chancellor; reversed.

*J. C. Marshall,* for appellant.

The main defense is that Rose had authority from Mrs. Taylor to receive payments on the loan which were never received by Mrs. Taylor. The court erred in allowing credit for these payments to Rose, as he was the agent of Oliver and not of Mrs. Taylor. The evidence is undisputed that Rose was Oliver's agent in securing the loan and was paid a commission for so doing and the burden was on Oliver to show the authority of Rose to receive the payments. The notes were not demanded. Here we have a straight case of a borrower procuring a loan through his own agent and the papers being kept in hand by the lender and the burden is on Oliver to show the authority by Rose to receive the payments. Rose was Oliver's agent and not Mrs. Taylor's and she not having received the money is not bound by the payment. 2 C. J. 447; 1 So. Rep. 340; 20 N. W. 628; 58 So. Rep. 594;

118 Ark. 316; 89 *Id.* 435; 77 N. W. 414; 76 *Id.* 324; 72 *Id.* 372; 83 S. W. 372; 105 Ark. 152.

Authority to an agent to receive interest on a loan is no authority to accept the principal of a loan. 105 Ark. 152, and cases *supra.* The collection of other securities for the principal sum nor authority to collect interest is sufficient to imply authority to accept payment of the loan. 26 Ill. App. 433; 63 N. W. 534; 62 *Id.* 140.

It is the universal practice to take up and cancel notes when paid. The inference of authority to receive is founded on the possession of the notes and does not exist without such possession. 55 N. E. 367; 1 A. & E. Enc. Law, 1026.

Authority to negotiate loans raises no presumption of authority to collect. Payment to a third person not in possession of the notes does not bind the holder, although such person is trustee in the mortgage and the note is payable at his office. 23 L. R. A. (N. S.) 418, and note; 105 Ark. 152; 2 L. R. A. (N. S.) 52; 78 N. W. 164; 55 N. E. 367; 1 A. & E. Enc. L., 1026; 85 Am. Dec. 296; 23 L. R. A. (N. S.) 418, and note; 1 So. 340; 20 N. W. 628; 72 *Id.* 478; 2 C. J. 447, etc.; 70 N. E. 665; 65 Ark. 325; 23 Am. Dec. 157; 118 Ark. 316; 89 *Id.* 435; 75 *Id.* 170. Appellant was not bound by the acts of Rose, nor did she ever ratify his acts as to a release of a mortgage by part payment of the debt. See 127 Ark. 577; 27 Cyc. 1416.

A trustee in the mortgage has no authority to release it without the consent of the creditor. 102 Ill. 121; 112 *Id.* 408; 61 Pac. 197; 31 N. J. Eq. 536; 156 S. W. 483; 29 La. Ann. 548; 124 Ark. 360.

There is no question of estoppel here, as Mrs. Taylor had no knowledge of the release and Rose was not her attorney. The release was void for want of authority in Rose. 118 Ark. 316, and cases cited *supra;* 90 Pac. 90; 27 Cyc. 1415; 127 Ark. 577.

*Appellee pro se.*

The testimony is undisputed that Rose was the duly authorized agent of appellant and acted for her and in

her interest and she is bound by his acts. 102 Cal. 93; 26 S. E. 990; 146 S. W. 130; 132 *Id.* 220; 42 Ark. 97.

She probated her claim against Rose's estate and will recover from the estate and cannot recover twice on the same claim.

SMITH, J. This suit was brought by appellants to foreclose a deed of trust executed by appellee Oliver to J. M. Rose as trustee for appellant, and to foreclose a vendor's lien which had been reserved to secure the payment of certain notes which appellant claimed to hold as collateral security for the debt secured by the deed of trust. Certain payments on the debt thus secured had been made to Rose who died without having accounted to Mrs. Taylor for these payments, and the right to these credits is the point involved.

The testimony in the case may be summarized as follows: Oliver desired to buy a tract of land in Perry County but to buy this piece of land he was compelled to buy a tract of 320 acres of which the land desired was a portion. Oliver applied to Rose for a loan of two thousand dollars, and this loan was made and evidenced by five principal notes and five interest notes, all payable to the order of Mrs. Taylor, one principal and one interest note falling due each year. Oliver sold to one Ray eighty acres of the land and took in payment therefor six notes, each for $200, these being the notes which Mrs. Taylor says were given as collateral. Oliver's notes to Mrs. Taylor and Ray's notes to Oliver were all dated November 1, 1910, but Oliver says Ray's notes were erroneously dated. Certain payments of principal and interest were acknowledged in the complaint and there was a prayer for foreclosure for the balance alleged to be due.

The answer alleged a number of payments for which credit was not given, and alleged that a certain eighty acres of the land had been sold to one S. D. Campbell for $600 under an agreement with Rose that the purchase money notes should be collected and applied to the payment of the original debt, and that, default having been made by Campbell in the payment of this purchase

money, a suit had been brought by Rose for Mrs. Taylor and payment enforced by this suit, the amount of which payment was claimed as a credit. The court found the facts as asserted by appellee and allowed the credits claimed and gave judgment for the balance found due, and this appeal has been duly prosecuted.

Mrs. Taylor testified that Rose was not her agent but was the agent of Oliver, and, as such, applied to her for a loan which she subsequently made. That all the notes, both for the principal and interest, were delivered to her, together with the deed of trust, and that she thereafter continuously retained possession of them until certain of them were paid and the notes which were paid were delivered to Mr. Rose for Oliver. But it was discovered that she was mistaken in that she had not surrendered any of the notes. She says the notes of Ray to Oliver were also given her, but they were delivered as collateral. She denied any knowledge of the Campbell transaction, or any authority by Rose to bring suit in her name, as well as any knowledge that he had done so. Rose never at any time made any charge against her for services in connection with this suit against Campbell or the negotiation of the loan, and Mrs. Taylor always regarded him as the agent of Oliver.

Oliver testified that he applied to Rose for a loan and explained the purpose for which it was desired and his plan in regard to the resale of portions of the land, and that he took notes from each of the parties to whom he sold land and placed all the notes in one package and sent them to Rose as agreed. He had no title to the land at the time he made the application for a loan. Rose inspected the land and examined the title and made the loan, as witness supposed, for Mrs. Taylor, although he practically admits that he paid Rose a commission for negotiating a loan. Campbell defaulted in his payments, and he conferred with Rose in regard to a suit to be brought to enforce payment, and during this conference Mrs. Taylor came to Rose's office and, being introduced to Oliver, she stated that Rose had the matter in charge

and whatever he did was satisfactory to her. That during the same conference Rose went to his safe and looked up the mortgage and got the description of the land so that he could bring the suit to foreclose, and that Rose had the Campbell notes at the time in the safe. The suit against Campbell was adjusted and Rose executed a power of attorney to the circuit clerk to satisfy the Campbell mortgage, and this was done. A witness named Carden corroborated Oliver as to the conversation had between Oliver and Mrs. Taylor, which was said to have occurred about July, 1913. Mrs. Taylor denied that such a conversation occurred, and her own testimony, as well as that of one Bodman, the secretary of the Union Trust Company, of Little Rock, makes it reasonably certain that Oliver and Carden were at least mistaken as to the time of the alleged conversation, as Mrs. Taylor left Arkansas for Kentucky the last of May or the first of June and remained out of the State continuously until about September 15. And it was also shown that a brother-in-law of Mrs. Taylor in Kentucky, one Judge Winn, had, in his office in Kentucky, the mortgage at the time Oliver said Rose had it in his office. Mrs. Taylor admitted that since 1910 Rose had made three loans for her, but denied that the loan in question was one of them.

Oliver, recalled, testified that although the notes to Mrs. Taylor were dated November 1, the transaction was closed on November 4, this being the date which he, himself, secured his deed from his vendor; and that he sold the land to Campbell on November 12, and another eighty to one Smith on November 16, following the execution of the deed of trust, and that notes evidencing these transactions were sent to Rose on November 18.

It was shown that upon the death of Rose, Mrs. Taylor filed a claim against his estate for the sum of $3,149. This claim was filed on May 6 after the death of Rose on October 22 prior thereto.

We think, under the facts stated, that the court should not have allowed Oliver credit for the payments

made to Rose which did not reach Mrs. Taylor. In the case of *Bagnell* v. *Walker,* 65 Ark. 325, this court said (to quote the syllabus): To a bill to foreclose a mortgage it is no defense that the mortgagor delivered to his agent the amount· of the mortgage debt, with interest, to be transmitted to the mortgagee, if such agent failed to transmit the money to the mortgagee.

Appellee says, however, that Rose was in fact Mrs. Taylor's agent with full authority to act for her and to receive and receipt for the payments which were made, and that if this actual authority did not exist it was at. least within the apparent scope of Rose's authority to make such collections. A statement of the law applicable to the facts in this case, as we understand them, is found in 2 C. J., p. 447, where it is said:

"Section 45 (2) Agent of Borrower. If a person desiring a loan makes known that desire to one who applies to a money lender and consummates the loan, the intermediary *prima facie* is the agent of the borrower, not of the lender, and justifies the lender in paying him the amount of the loan. So if the borrower in a written application or otherwise expressly makes the intermediary his agent, if he pays the agent's commission for negotiating the loan, or if he employs the intermediary to examine the title to the property offered as security, or to discharge prior encumbrances thereon, these facts, taken collectively or in various lesser combinations, are generally held to justify an inference that the intermediary is the agent of the borrower. So also if the lender has given the. agent no authority to receive payment for him, and the borrower pays such agent, the debt is not satisfied until the money reaches the lender, for the intermediary is in such case acting as agent of the borrower to receive and transmit the payment."

It is true that certain payments made to Rose were remitted to Mrs. Taylor and properly credited by her. But general authority to make collections cannot be inferred from that fact. In the case of *Winer* v. *Bank of Blytheville,* 89 Ark. 435, the court held that it was not

error to refuse to instruct the jury that if the holder of
a series of notes permitted the payee's agent to collect
any of such notes then the maker had the right to pay
all of the notes to such agent. That case, as well as a
number of others, recognized the negotiable character
of a note as a constant warning that the maker of the
note should know who the holder of his note was when
payments were about to be made. In the case of *Koen* v.
*Miller,* 105 Ark. 152, we quoted with approval from the
case of *Hollinshead* v. *Jno. Stuart & Co.,* 77 N. W. 89,
the following statement of the law:

" 'If he neglected this simple requirement' (a de-
mand that authority for making the collection be shown),
'demanded no more by the law than by common prudence,
he paid at his peril; and, if loss occurs, he must bear it.
One party or the other must suffer, and he, being the
party in fault, must bear the burden.' "

And in this case of *Koen* v. *Miller, supra,* it was also
said: "In the case of *Bartel* v. *Brown* (Wis.), 80 N. W.
801, the court said: 'The imporance of protecting the
holders of commercial paper is so great that to warrant
finding that a person who assumes to have authority to
receive payment of the principal sum on any such paper
has such authority, possession of this paper itself by such
person, or proof *aliunde* of express authority is indispen-
sable.' As said by the court in *Smith* v. *Kidd,* 68 N. Y.
130, 'Any other practice would be dangerous in the ex-
treme.' 'If money be due on a written security, it is the
duty of the debtor to see that the person to whom he pays
it is in possession of the security. That is the best evi-
dence of authority. The payor is negligent if he relies
on anything less, and must abide the event of being able
to establish, by clear and satisfactory evidence, an ex-
press agreement between the holder of the security and
the supposed agent, authorizing the latter to represent
the former in the transaction. To that familiar doctrine
there are many authorities, a large number of which are
collated in Jones, Mort., § 964.' "

The doctrine of those cases is conclusive of this. Rose did not have the notes for collection at the time the payments were made; and we think the testimony does not show that Mrs. Taylor was guilty of any conduct which warranted Oliver in assuming that Rose had the authority to make these collections. The testimony is conflicting as to whether Rose was the agent of Mrs. Taylor, or of Oliver, in negotiating the loan; but, if it be assumed that Rose was the agent of Mrs. Taylor in this respect, it does not follow that he was also her agent for the purpose of receiving money in payment of this loan. Upon the contrary, the law is that authority to negotiate loans raises no presumption of authority to collect such loans without possession of the securities. The note to *Campbell* v. *Gowans,* 23 L. R. A. (N. S.), 414, cites many cases to that effect.

Of the land sold by Oliver it does not appear that any attempt was made to release from the deed of trust the Price lands or the Ray lands, and we think the testimony does not show any such authority as to the Campbell lands. Mrs. Taylor knew nothing of the sale to Campbell, and we are of the opinion that the testimony does not show that she authorized the suit brought to foreclose the lien securing the purchase money due from Campbell.

No substantial attempt is made to show that Rose had any authority to permit a sale of any portion of the mortgaged land to Campbell, and the mere fact alone that he was named as trustee in the original deed of trust gave him no authority to ratify the sale to Campbell by bringing suit to enforce the lien reserved in the deed to Campbell.

Rose, as trustee, had only such powers as were conferred by the deed of trust, or were necessarily incident to the performance of the duties there imposed. These duties were to sell the land upon default in the payment of the debt secured, at public sale, upon due advertisement thereof. And the right to consent to a private sale of the land was not incident to his duties as trustee.

Nor did he have the authoritity to cancel the deed of trust of record without the authority of the holder of the debt there secured. *Coffin* v. *Planters Cotton Co.,* 124 Ark. 360; *Steiger* v. *Britt,* 111 Ill. 328; *Harbour* v. *Scudder,* 61 Pac. 197; *Barbour* v. *Scottish-American Mortgage Co.,* 102 Ill. 121; *Chicago & Great Western Rd. Land Co.* v. *Peck,* 112 Ill. 408.

It is finally insisted that Mrs. Taylor ratified the collections made by Rose by filing a claim for the amount thereof against his estate. But that contention may be disposed of by saying that the testimony does not show that the payments involved in this litigation were included in the claim filed by Mrs. Taylor against the estate of Rose.

It follows, therefore, that the decree of the court below, allowing credit for the unauthorized payments to Rose, must be reversed, and it is so ordered; and the cause will be remanded with directions to the court below to enter a decree in accordance with this opinion.