E. ALLEN WALKER et al., Appellants, v. H. R. HOWELL et al., Appellees.

No. 39432.

JUNE 24, 1929.

OPINION ON PETITION FOR REHEARING NOVEMBER 21, 1929.

REHEARING DENIED FEBRUARY 12, 1930.

*Howard L. Bump* and *Paul W. Walters,* for appellants.

*Sampson & Dillon* and *W. E. Miller,* for H. R. Howell, appellee.

*Victor Shultz,* for H. S. Taylor and Elmer Loucks, appellees.

*Guy A. Miller,* for Elmer Loucks, appellee.

KINDIG, J.—A preliminary question involved in this general controversy was previously considered and determined by this court. *McPherson v. Commercial Bldg. & Sec. Co.,* 206 Iowa 562. Many of the facts are recited in that opinion.

The Commercial Building & Securities Company was organized under the laws of Iowa in January, 1920. Authority

was thereby given the corporation to conduct a real estate and personal property investment business, with power to purchase, exchange, lease, or otherwise acquire real estate, plat, subdivide, and improve the same; and for that purpose this business concern was granted the power to borrow money, evidence the debt therefor by notes or bonds, and secure the same through mortgages, trust deeds, or otherwise. After being thus chartered, the company issued capital stock in the par value of $328,000, under a total authorization of $500,000. H. R. Howell and H. S. Taylor, defendants-appellees, were the promoters. They, together with two others, were also incorporators. Succeeding the incorporation and organization thereunder, the appellees Howell and Taylor were made directors, and became the president and secretary, respectively, of the corporation. Furthermore, said president and secretary were appointed and authorized to be the institution's general managers, and therefore they were to, and did, receive one half of the company's profits until February 1, 1922, when these men were appointed to that managerial position for three years, with compensation as follows: $11,000 for the first year; $12,000 for the second; and $13,000 for the third. In addition to that, the managers were to receive one half of the earnings above 16 per cent.

Thus Howell and Taylor continued in the management of the concern until it went into receivership, during the month of July, 1925. Soon after its organization, the corporation, in July, 1920, by its board of directors authorized the issuance of collateral trust bonds under a trust deed. Accordingly, eight series of such bonds, aggregating $500,000, were executed, and sold in the commercial world. Under the trust indenture, therefore, the Central State Bank was designated trustee. See *McPherson v. Commercial Bldg. & Sec. Co.*, supra. Said eight series are not directly, but only incidentally, concerned in this litigation.

Subsequently, in September, 1921, the corporation authorized a series of bonds known as gold debentures, designated as "DA." Provision was made thereunder for a total bond issue of $100,000, bearing 6 per cent interest, but only $61,500 of these instruments were actually sold. Those are the bonds involved in the present suit. Elmer Loucks, defendant and appellee, and Frank S. Cummins were the trustees named in said

trust indenture. Security for the bonds contemplated by that trust deed was to be "collateral owned by said company in the form of real estate or real estate securities or bonds and notes of various kinds, in an *amount* [the italics are ours] equal to or greater than the *amount* [the italics are ours] of outstanding bonds so issued."

Financial failure overtook the corporation, and, as before mentioned, a receiver was appointed for it in July, 1925. One year later, appellants, E. Allen Walker, Mable Pitt, and Mark L. Johnson, as a bondholders' committee, appointed by the gold debenture bondholders, intervened in the receivership proceedings aforesaid, commenced a foreclosure action, and impleaded the appellee Elmer Loucks, trustee, his cotrustee, and the receiver. As a result, judgment in the sum of $57,944.20 was duly entered, foreclosure decreed, and the collateral in the hands of the appellee, trustee, and his cotrustee, was disposed of at public sale for $8,496. From this sum there were deducted the expenses and costs of sale, thus leaving a balance of $6,021.80 to be credited on the judgment. This suit was brought by appellants, as such bondholders' committee, against appellees, Howell, Taylor, and Loucks, to recover the loss caused the gold debenture bondholders.

Four general propositions are urged by appellants: First, that the corporation, through the managers, Howell and Taylor, collected proceeds of the collateral security, which were not returned to the trustees for the satisfaction of the gold debenture bonds; second, that the trustees under the gold bond indenture permitted and allowed unlimited and unlawful substitutions of collateral securities; third, that the trustees permitted the corporation, through its managing officers, to "take down" said collateral and use it for the benefit of the "eight series—Collateral Trust Bonds" first above mentioned and certain officials who loaned the corporation money; and fourth, that the trustees substituted in lieu of the original in each instance less valuable securities. That replacement, it is alleged, was made by the trustees with the aid and connivance of the managing officers, Howell and Taylor.

I. At the outset, we are confronted with the duty of construing the trust deed for the gold debenture bonds. Does it

permit the corporation to collect and retain the proceeds of the collateral placed with the trustees? Such is the problem.

Preliminary to a study of the terms embraced within that trust instrument, it is helpful to notice the general plan under which the company operated. It was buying lots and building houses thereon to sell on contract. Usually these purchase-money contracts were subject to a prior mortgage, negotiated for the purpose of financing the betterments. In order to continue in business actively, sales and collections were essential. Without them, there would be stagnation and business inactivity. So, with the aim of making possible the procurement of ready money, the scheme was launched whereby the corporation gave its said securities, in order to protect the gold debenture bonds. Turning now to the trust deed authorizing the same, there is to be found among its provisions the following:

"The company [the Commercial Building & Securities Company] shall collect and receive the payment of principal and interest as they become due upon the various forms of collateral pledged with said trustees * * * The company shall be permitted to collect principal and interest upon the various collateral in the hands of the trustees, only so long as it shall have paid the principal and interest upon the bonds as they respectively mature. In the event that the company shall be in default for a period of sixty (60) days in its payments of principal and interest upon the said bonds, then the trustees may, as long as said default continues, collect, receive and hold the payments of principal and interest due from time to time upon the collateral in their hands."

What, then, did the language above quoted express, where the plain and unambiguous words are, "the company shall collect and receive the payment of principal and interest as they become due upon the various forms of collateral pledged * * * only so long as it [the corporation] shall have paid the principal and interest upon the bonds as they respectively mature?"

Obviously, the corporation desired to finance its operations in that way. There was extended in the language under consideration the power to collect the principal and interest on the collateral pledged, as and when the same came due. De-

mand is not made in that deed for the payment of such collections to the trustees. But one requirement is made as a prerequisite for the corporation's unlimited and continuous collection, and that is that it in turn shall pay the principal and interest on the bonds "as they respectively mature." Manifestly, under the mandates of the trust deed, the corporation may pay that principal and interest upon the bonds with any money in its possession: that is to say, it is not required that the identical interest or principal collected on the collateral, without change in form or substitution, be applied on the bonds. This must be true, for no provision is made in the trust deed that the collateral and the bonds shall mature at the same time.

Clearly, therefore, the corporation had a right to collect the collateral after it was placed with the trustees, and retain the proceeds thereof. Provision for this collection and retention is plainly and definitely made in the trust deed. Ambiguity or uncertainty nowhere appears in that document with regard to this. Hence, appellees are not liable for the corporation's acts in making those collections and retaining the money derived therefrom.

II. Having thus concluded, it is next to be decided whether the gold debenture bond trust deed permits substitutions for, or replacement of, the collateral so collected. The deed itself  must furnish the solution. *Taylor v. Oliver,* 137 Ark. 515 (208 S. W. 595); *Mullen v. Eastern Tr. & Bank. Co.,* 108 Me. 498 (81 Atl. 948); *Rhinelander v. Farmers' L. & Tr. Co.,* 172 N. Y. 519 (65 N. E. 499); *Colorado & S. R. Co. v. Blair,* 214 N. Y. 497 (108 N. E. 840); *Bremer v. Hadley,* 196 Mass. 217 (81 N. E. 961); *Mercantile Tr. & Dep. Co. v. Gottlieb-Bauernschmidt-Straus Brew. Co.,* 122 Md. 502 (90 Atl. 98); *Goad v. Montgomery,* 119 Cal. 552 (51 Pac. 681); *Lamar L. & C. Co. v. Belknap Sav. Bank,* 28 Colo. 344 (64 Pac. 210). See *McCash v. Derby,* 158 Iowa 371; *Lingenfelter v. Iowa Tel. Co.,* 132 Iowa 211.

Specific substitutions or replacements are permitted by the trust deed, provided the trustees deem any collateral pledged not worth its face value. Application of that power, however, is not specifically made by the deed itself to the collateral collected in the manner and way aforesaid, although, by necessary

implication, it must be so applied, in order to carry out said plan of collection. Forsooth, the power to replace or substitute is a necessary corollary of the right to collect. As previously stated, there is no provision in the trust deed that the collateral and the bonds shall mature at the same time. Necessarily, then, the corporation, under its power of collection, would have received considerable portions of the collateral funds through collection before the particular interest or principal was due on the bonds. During that space of time, the bondholders would be without collateral security to the extent of such collection, were the trustees not permitted to call for and receive replacement collateral for the collected or pro-tanto collected paper. A fundamental idea underlying the plan, as expressed by the trust deed, was that the corporation, through its officials, should at all times furnish adequate collateral to secure the bonds.

By necessary implication, then, if not through express language, the trust deed contemplated replacement of this collateral to the extent collections were made on that placed.

" 'Undoubtedly, necessary implication is as much a part of an instrument as if that which is so implied was plainly expressed * * *.' " *Rhinelander v. Farmers' L. & Tr. Co.*, supra.

The trustees were required to know of the collections, and if a debtor, under the collateral, was in default for 60 days, the corporation, by the provisions of the deed, was compelled to make replacements. Likewise, if, for any reason, as before stated, the trustees believed the collateral pledged was not worth its face value, the corporation was also under obligation to supply the deficit by substitution. When, in any event, the corporation did not furnish such collateral, or failed to pay the interest and principal on the bonds, then the collection on its part must cease, and in 60 days thereafter, the trustees alone could receive the principal and interest from the debtors who were bound to pay the collateral. Yet this power of collection possessed by the trustees could apply only to the collateral held by them. If, then, there was to be full protection for the gold debenture bonds, it was necessary to replace or make substitutions for those pledged securities which the corporation had

previously collected. Unquestionably the trust indenture contemplated full security, for such was its express provision.

Replacement of the collateral was proper, then, to supplement that satisfied or reduced by the authorized collections. For those replacements or substitutions, the appellees are not financially responsible to the appellants.

III. However, a different proposition is presented in relation to the withdrawal of collaterals from the gold debenture bond issue for the purpose of redepositing with and protecting  the eight series collateral trust bonds above described. No such authority can be found, express or implied, in the deed for the gold debenture bonds. Appellees, however, contend that such authorization appears in the trustees' certificate on the gold debenture bonds. So far as material, that certificate contains the following phraseology:

"We, the undersigned trustees, do hereby certify that * * * the Commercial Building & Securities Company, of Des Moines, Iowa, has deposited and pledged with us, as trustees, real estate, or real estate securities, or bonds and notes of various kinds in an amount equal to or greater than the amount of outstanding bonds of Series 'DA.' That we hold said securities in trust for the benefit of the lawful holder or holders of said bonds, with full power of substitution of securities of equal or greater value, and with power to collect or dispose of the same and to use the proceeds thereof to redeem such bonds in the event default shall be made in their payment, and that we hold said securities subject and according to the provisions and terms of a certain indenture of trust," etc.

Reference to the substitution and collection appearing in the trustees' certificate aforesaid unquestionably relates to the provisions of the trust deed itself. Nothing contained in the language of that certificate indicates in any way that the trustees were endeavoring to change or vary the terms of the trust deed. Identification, rather than change of the trust under that deed, was the purpose of the trustees when executing the certificate. Both substitution and collection are expressed or implied in the trust deed, as before indicated. Therefore, the trustees clearly sought to, and did, do nothing else but assume

the burdens and duties imposed upon them by the trust instrument which created and controlled the gold debenture bonds. The transfer of collateral by the trustees from its rightful place in the pledged deposit, protecting the gold debenture bonds, to another corporate department, for the use of a different and independent bond issue, constituted an active and deliberate mismanagement. Authority for such withdrawal of collaterals does not exist. Execution of the trust neither contemplated nor permitted that action. Violation of duty, rather than fulfillment thereof, resulted from that manipulation. Thus the trustees, not rightfully, but wrongfully, exercised dominion and control over the collaterals so pledged, in denial of appellants' right thereto. Consequently, if, upon the new trial, the jury finds that the trustees thus wrongfully executed their trust, it will be warranted in saying that there was a breach thereof, and, accordingly, if the fact-finding body further determines that loss accrued to the appellants through such breach of trust, damages shall be fixed consistent therewith.

Theoretically, the replacement of collateral under the trust deed was to be made for securities rightfully and legally withdrawn, and not to facilitate wrongful substitution. Each bondholder is entitled to the fulfillment of the trust agreement, and need not accept something less or different. Thus the bondholder had a qualified ownership in the pledged property, and appellees could not destroy the same or, except as authorized by the deed, force an exchange thereof for something else. While it is true the corporation, if not in arrears, could collect the collateral when it became due, yet, until the hypothecated paper matured, and such collection thereof was in fact made, the security pledged remained as a protection for the bondholders, in case there was default in the payment of the principal or interest on the bonds. To that extent each item of the collateral was valuable to the appellees.

In view of this, these trustees could not follow the practice of accepting from the corporation collateral contracts with little equity, and retain them until, by partial payments, the remaining obligation thereon became a desirable security, and then transfer the same from the less favored gold debenture bond issue to the more popular collateral trust bond issue. Substantial evidence appears in the record supporting the breach of

trust and appellees' loss because thereof. Necessarily, then, this issue should have been submitted to the jury.

IV. Also, the record discloses that the appellees, trustees, permitted the corporation and its officers to "take down" similar collateral from the gold debenture bond issue to protect loans made to the company by its officers and directors. That was done as the other, without and contrary to the authority afforded by the trust deed. For the reasons hereinbefore indicated, the trustees, if they so acted, thereby committed a breach of trust, and they are liable to the appellants if loss was occasioned thereby. It is for the jury to decide: First, whether the trustees did thus breach the trust; and, second, whether appellants suffered damages because thereof.

As previously indicated, the substituted collateral received by the gold debenture bondholders in lieu of that transferred, to secure the officers and directors' notes and the collateral trust bond issue, when finally converted into cash, amounted, in the aggregate, to $8,496, and, after subtracting costs and expenses, the net remainder was $6,021.80. Suggestion is made that the difference in values can be accounted for because there was a forced sale, and because the financial disturbance which took place during that time greatly reduced all values. The jury has the duty of deciding all questions relating to values. There is some evidence in the record indicating that part of said collateral actually was worth 100 cents on the dollar. Credit should be given the trustees for the amount received by the gold debenture bondholders from the receivership and foreclosure sale of the substituted collateral. Upon proper evidence, and under apt instructions, the jury will determine the appellants' loss.

V. On behalf of Howell and Taylor, it is argued that they, as the corporation's officers and directors, are not responsible to appellants for the loss aforesaid. Regarding what may be the law in reference to an officer's liability for nonfeasance, we are not now concerned, and make no pronouncement upon it. Appellees Howell and Taylor were the managers in control of the corporate activities. They, in that capacity, furnished the collateral to the trustees. Likewise, these managers arranged for, sanctioned, and generally controlled transfers and substitutions of collateral. That the corporation misappropriated and

converted the securities there is no doubt. *Leonard v. Sehman,* 206 Iowa 277; *Danbury Tr. & Sav. Bank v. Weber,* 197 Iowa 263. See, also, *Church v. Bloom,* 111 Iowa 319. Under the record, said corporate officers actively participated in such conversion. This they did by willful and fraudulent mismanagement. Condonation is sought for them because the actual receipt of collaterals from, and delivery thereof to, the trustees were done by subordinate agents. Yet these subordinates, as well as the affairs and activities of the corporation, were managed and controlled by the appellees Howell and Taylor. Such control was a part of their management. *Sweet v. Montpelier Sav. Bank & Tr. Co.,* 73 Kan. 47 (84 Pac. 542).

Nor can excuse be found in the fact that these officers and managers were promoting the interests of the corporation. Officers of a corporation are guilty of conversion and fraudulent mismanagement even though the act constituting such was done for and on behalf of the corporation. 14a Corpus Juris 175, Section 1955; *Hempfling v. Burr,* 59 Mich. 294 (26 N. W. 496).

Within the language of the trust indenture, it is incumbent upon the corporation to furnish adequate collateral to the trustees in the premises. So if, upon the new trial, the jury finds that these officers did do the things aforesaid, then it may be concluded that there was a conversion, and damages shall be allowed as for a conversion. Furthermore, if only one of said officers so acted, and caused damages, then he alone is liable; but if both thus conducted themselves, and brought about a loss to appellants, then both are responsible. Manifestly, in this record there was evidence upon which the jury could say (if they so chose) that these officers were liable to appellants for said conversion. Hence, such issue should have been submitted to the fact-finding body, because said officials are responsible to appellants for such intended and injurious acts. 14a Corpus Juris 177, Section 1956; *Hubbard v. Weare,* 79 Iowa 678; *Rumery v. Standard Seed Tester Co.,* 194 Iowa 325; *Fish v. White,* 188 Iowa 57; *United States Fid. & Guar. Co. v. Corning State Sav. Bank,* 154 Iowa 588; *Hempfling v. Burr,* supra; *Browning v. Fidelity Tr. Co.,* 250 Fed. 321; *Rauch v. Brunswig,* 155 Mo. App. 367 (137 S. W. 67); *McCollom v. Dollar* (Tex. Civ. App.), 176 S. W. 876; *Virginia-Carolina Chem. Co. v. Floyd,* 158 N. C. 455 (74 S. E. 465); *Sweet v. Montpelier Sav.*

**834**

*Bank & Tr. Co.*, 69 Kan. 641 (77 Pac. 538); *Vujacich v. Southern Com. Co.*, 21 Cal. App. 439 (132 Pac. 80); *Dollar v. Lockney Supply Co.* (Tex. Civ. App.), 164 S. W. 1076.

VI. Again, it is asserted by the officers that they are absolved from any and all liability by a protective paragraph in the trust deed. So far as material, said provision is:

"It is understood and agreed that the company shall be liable for the payment of said bonds * * *, but the holder of any bond shall not have any claim based upon said bond, or upon this trust indenture against any incorporator, stockholder, officer or director, past, present or future, of the company, all such liability being by the acceptance of any bond or bonds as part of the consideration for the issuance thereof, expressly released."

Plainly, it was not intended by that stipulation to protect corporate officers in the commission of conversion or other willful wrongs. Business integrity and the honest execution of trusts make impossible the interpretation demanded by appellees. *Browning v. Fidelity Tr. Co.*, supra. Therein a similar thought is expressed in reference to a trustee's absolution from liability. During the discussion, the court in the *Browning* case said:

"It [the trustee] insists that the provision [absolving trustees, etc., from liability] holds it immune from liability for all acts 'whatsoever,' with the single exception of acts done in 'bad faith' * * *. The plaintiff admits that, as a general proposition, parties creating a trust can, by their agreement, limit the liability which is imposed by one and accepted by the other * * *, but maintains, very properly, that the law, dictated by considerations of public policy, determines a point beyond which the parties cannot agree to relieve a trustee from liability for breach of a trust duty. For instance, a trustee cannot contract for immunity from liability for acts of gross negligence or for acts done in bad faith. Such contracts are invalid, because repugnant to law."

Similarly it may be said concerning managing officers of the corporation.

Resultantly, the protective provision in the trust deed

aforesaid does not relieve appellees from responsibility for appellants' loss.·

Wherefore, appellants are entitled to a new trial, and the judgment of the district court is hereby reversed.—*Reversed.*

All the justices concur.